# Province *versus* Crow.

1. Gallatin, in 1797, laid out a town; made and recorded its plot, and a certificate stating that the courses and distances of lot No. 53 and other lots, and " the course of Ferry street from the corner of No. 53 to the river, not being ascertained, * * * and the lines of Nos. 158, 159 and 160 are not yet precisely ascertained," &c. The plot showed Ferry street to be one of the lines of 160, and showed a triangle without a number between the street and No. 53. In 1802, Gallatin conveyed No. 53, as bounded by " No. 52, Ferry street, No. 160 and the river, as by reference to the plot will appear." The owners of No. 160 had not taken possession, used, nor claimed the triangle until in 1869 when the owner of that lot brought an ejectment for the triangle. *Held,* that he had shown no title to the triangle as part of No. 160.

2. The recorded plan is the only muniment of title to the owners of 160 and 53.

3. The conduct of the owners of 160 was a contemporaneous construction of the limit of the lot, adverse to their interests.

4. " *Contemporanea expositio fortissima in lege*" applied.

5. The mere recital in the conveyance of 53, of its boundaries, is insufficient to prove that Gallatin thereby ascertained the line of 160, and carried it over the street so as to include the triangle.

6. Such recital could not operate in favor of the owner of 160, he not claiming under that deed, nor was the record notice to him.

November — 1871. Before THOMPSON, C. J., READ; AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Fayette county :* No. 129, to October and November Term 1873.

This was an action of ejectment brought June 14th 1869, by Alexander Crow against Jesse Province, for a lot of ground in the town of New Geneva, "being 30 feet of lot No. 160, according to the plot of said town adjoining lot No. 53, and bounded on the west by the Monongahela river."

By the paper-book of the plaintiff in error, it appeared that in 1797, the town of New Geneva was laid out by Albert Gallatin, who had a plot of the town duly recorded, with his certificate, giving the boundaries of many of the lots, and the courses of several of the streets. In the certificate he says: " The lots from No. 48 to No. 53, are each of them 2½ perches in length along Ferry street, and extend back to the Monongahela river, being divided the one from the other by line running 34° W. * * * the course of Ferry street in front of lots No. 50, 51, 52 and 53 is N. 42°

[Province *v.* Crow.]

E. * * * the course of Ferry street from the corner of lot No. 53, is not precisely ascertained, and also that the lines of lots No. 158, 159 and 160, are not yet precisely ascertained." In 1850, Province, the defendant, bought lot No. 53, and in 1865, Crow, the plaintiff, bought the adjoining lot No. 160. The premises in dispute are a piece of ground about triangular, on the south-west side of Ferry street, the defendant claiming that his north-east line extended to Ferry street, and the plaintiff claiming that the triangle, the base of which is on the Monongahela river, extending about 30 feet south-west from Ferry street, belonged to him.

The recorded plan shows that No. 160 was enclosed by five lines, Ferry street being one and the river another, and that the triangle is on the other side of Ferry street, without a number; one of the lines of the triangle being Ferry street.

The accompanying draft will sufficiently indicate the relative position of the disputed premises.

The case was tried, February 1st 1871, before Gilmore, P. J.

The plaintiff gave in evidence a deed dated April 5th 1802, from Albert Gallatin to John Hewitt, for lot No. 53, bounded by lot No. 52, Ferry street, lot No. 160, and Monongahela river—as by reference to plot will more fully appear, &c. Reserving the right of a ferry, through any lot; also deed dated June 10th 1830, from Albert Gallatin to Tazwell P. Martin, conveying amongst other real estate, lots No. 49, 50, 51, 52, 158, 159, 160, by the numbers without the streets or roads, and all the right of the party of the first part to keep a ferry, that he and wife had; also deed dated April 18th 1839, from Martin to Elias Bailey, for lots No. 158, 159 and 160, excepting a part sold to William James, which did not include any part of the land in dispute; also the will of Elias Baily, proved March 29th 1841, devising his lots to his four children, of whom Asher M. Baily was one; also deed dated January 29th 1866, from the other three children to Asher M. Baily; also deed dated February 24th 1870, from A. M. Baily to the plaintiff.

The plaintiff gave other evidence, for the purpose of showing his title to the triangle.

The defendant gave evidence showing that No. 53 had on the 22d of October 1832, been conveyed to R. P. Lott, who built on the triangle a shop which "stood out to the road." The defendant went into possession in February 1850, under articles from Lott, for No. 53 and part of No. 52; the fence then ran along the Ferry road down to the river. Lott conveyed to defendant, by deed dated June 24th 1869

A. M. Baily, the grantor of No. 160 to the plaintiff, had known the premises forty years, and testified that he and his predecessors had never claimed any land on the triangle side of the Ferry road. Lott had used the triangle, "had a fence out near the

road; it ran with the road. * * *  I told Crow when I sold to him that I never claimed the triangle."

There was other evidence running back for more than forty years, that the owners of No. 160 had not claimed beyond the Ferry road until Crow purchased.   There was evidence also, that the defendant and his predecessors had made improvements on the triangle with the knowledge of the owners of No. 160.

The defence was that the Ferry road was the true line of No. 160, that the Statute of Limitations barred the plaintiff's recovery, and that he and those under whom he claimed were estopped by having seen improvements made on the premises without making known that they claimed the land.

The defendant's points presented the defence as above stated.

Under the charge of the court, the jury found "for the plaintiff except so much as is covered by defendant's kitchen, as shown by a draft made by Martin Dickson, dated June 13th 1867, and herewith filed."

Judgment was entered on the verdict and the defendant took a writ of error.

The assignments of error were, the answers of the court below to the defendant's points, and that the court erred in entering judgment on the verdict as being too vague and uncertain.   The opinion of the Supreme Court renders it unnecessary to state the specifications of error in detail.

*W. Parshall* and *A. E. Willson*, for plaintiff in error.

*Collins*, *Baily* and *Campbell*, for defendant in error.

The opinion of the court was delivered, November 20th 1871, by

SHARSWOOD, J.—In the view which we take of this case, the only question to be examined is, whether the plaintiff below succeeded in showing a good title to the premises described in the writ of ejectment.   As the conclusion at which we have arrived upon this question is adverse to him, it will be altogether unnecessary to consider whether the case of the defendant as presented by the evidence upon the bar of the Statute of Limitations and upon the estoppel, ought to have been submitted to the jury, and whether the verdict was sufficiently certain to authorize the court to enter judgment upon it.

Albert Gallatin laid out the village of New Geneva upon the Monongahela river in the year 1797, and entered of record in the recorder's office of the county a plat of his intended town— on which certain lots were laid out and numbered.   In a certificate attached to this plat he stated that "the course of Ferry street from the corner of lot No. 53 to the river not being yet precisely ascertained, *and also* that the lines of the lots Nos. 158,

[Province *v.* Crow.]

159 and 160, are not yet precisely ascertained." This is just as it is given to us in the paper-book of the plaintiff in error, without any correction or explanation by the defendant. No copy of the certificate in full is found in the record. As the sentence is broken and ungrammatical, it is probable that the words "and also" should be omitted. The sense would then be that in consequence of the course of Ferry street not having been precisely ascertained, the lines of lots Nos. 158, 159 and 160 were not precisely ascertained, because they would depend upon the course of the street. It may be that in the certificate these two sentences are disjoined and others intervene between them. It is not, however, very material, as it does not appear by anything in the evidence that the course of this street or the lines of these lots ever were more precisely ascertained. I will notice presently what is alleged to amount to an ascertainment of one of the lines of lot No. 160. On the 10th of July 1830, Mr. Gallatin conveyed to Tazewell P. Martin *inter alia* lot No. 160, by no other description, and with no boundaries. There is no other source of information, then, to which to resort than to the recorded plan —upon the face of which lot No. 160 is enclosed within five lines, of which Ferry street is one, and the river another. The triangle upon the other side of Ferry street, the premises in controversy, adjoining lot No. 53, is a distinct and separate lot enclosed by three lines, of which Ferry street is one, and without any number upon it. There is no mark or line to connect these two lots on the opposite sides of the street, as it seems very clear that there would have been had both been intended to constitute one and the same lot, and Ferry street to pass through it, as now contended. It appears besides, from the uncontradicted evidence in the cause, that Martin and those claiming under him, from whom the plaintiff below derived his title, from 1830 to 1869—a period of nearly forty years—never took possession or made any use of the triangle, but on the contrary disclaimed all title to the land upon the other side of the street. Their possession and their claim were bounded by the street. This was a contemporaneous construction adverse to the interests of those making it, and *contemporanea expositio semper est fortissima in lege.* The only thing which is relied on by the defendant in error, and which prevailed with the learned judge below to meet this state of facts, was, that in the deed by Mr. Gallatin to John Hewitt, dated in 1802, for lot No. 53, it is described as bounded by lot No. 52, Ferry street, lot No. 160 and Monongahela river. This mere recital of the boundaries of another lot we consider of itself to be entirely insufficient to prove that Mr. Gallatin thereby ascertained the line of lot No. 160, and carried it over Ferry street, so as to include the triangular lot in question. It is altogether too uncertain to accomplish such a result; for it might with equal force of reasoning be maintained

[Province v. Crow.]

that he meant thereby to change the line of lot No. 53 and remove it across the street so as to make it coincide with the line of lot No. 160, as marked on the recorded plan. Had his intention been to ascertain the line of lot No. 160 to be coincident with the marked line of lot No. 53, he certainly would have stated it more distinctly, and perhaps have made a record of it as he had done of the plan; at all events, he would have so described it in his subsequent deed of lot No. 160, and made his grantee of that lot aware of it. Such a recital might possibly operate as an estoppel in favor of the grantees of lot No. 53, but it cannot avail the grantees of lot No. 160, who do not claim under the deed in which it is contained. Their mouths would not have been closed had it been against their interest, neither therefore shall they take advantage of it as an estoppel in their favor. It could not have effect as a grant nor as an estoppel. It was at most but a declaration by Mr. Gallatin not communicated to his grantees of lot No. 160, the record of which was no notice to them, and therefore no more effectual to invest them with a right than were the declarations of the subsequent grantees that their claim was bounded by the street effectual to bar their title if they had one. Under these circumstances we hold that there was nothing to vary the recorded plan, which is the only muniment of title upon which the claims of the respective lot-holders can be safely rested. In his deed to Martin for lot No. 160, Mr. Gallatin makes no mention of Ferry street as passing through and over the lot granted, which certainly would have been done in the most careless conveyancing, if the entire ground on both sides of the street had been intended to be conveyed with so important a reservation as that of a public street to be laid out over and through it.        Judgment reversed.