ERNEST QUADE, Appellant, v. A. H. PILLARD, Appellee.

**Boundaries:** ACQUIESCENCE. Where a government subdivision of land has been platted into lots and a highway has for years been recognized as the division line, with reference to which the lots have been bargained and sold, such boundary will prevail, although the location of such highway on the plat and as it in fact exists does not correspond.

**Deeds:** DESCRIPTION. Where the description in a deed refers to a recorded plat such plat is to be considered as furnishing a correct description of the property, unless other controlling facts and circumstances are shown.

**Same.** Where the parties to a deed believe that it carries title up to a certain defined line and act accordingly they are bound thereby.

*Appeal from Dubuque District Court.*— HON. FRED O'DONNELL, Judge.

WEDNESDAY, JULY 3, 1907.

ACTION under the statute to recover real property, and for damages. Trial was had to a jury, and there was a verdict and judgment in favor of defendant. Plaintiff appeals. —*Reversed.*

*Lyon & Lyon,* for appellant..

*T. J. Fitzpatrick,* for appellee.

BISHOP, J.— The facts of the case are not in substantial dispute, and may be stated as follows: During the year 1873, Samuel Skaife, then the owner of the northwest quar-

ter of the northeast quarter of section 23, township 88, range 2, Dubuque county, caused a plat thereof to be filed and recorded showing a subdivision into two parcels. According to such plat, the parcels were separated by Buncombe Road, so called, which runs from north to south, but irregularly, through the forty, and in which no change has ever been made; and the east parcel was designated as lot 1, said to contain seven and fifty-five hundredths acres, and the west parcel as lot 2, said to contain thirty-two and forty-five hundredths acres. The record is silent on the question whether or not said plat was based on an actual survey of the lands. In the same year said Skaife conveyed lot 1, by that description, to Jacques Pillard; the deed reciting, however, that the lot contains " 7.55 acres, more or less, according to the official plat thereof." Jacques Pillard died some time previous to the year 1901, still seised of said lot, and during that year the defendant, one of his sons, became the sole owner thereof by purchase of the interests of the other heirs.

Plaintiff, as a witness on the trial, testified that down to the year 1900 — the time when a survey was made, as presently to be referred to — Buncombe Road had always been recognized as the true line separating the lots; that no claim to the contrary, or of right to any portion of the lands on the west side of the road had ever been asserted, either by his father or the heirs. While John Skaife, son of Samuel Skaife — at the time of the trial deceased — testified that he was present when the sale was made by his father to Jacques Pillard, and " that the land that was sold was to be all the land on the east side of Buncombe Road; there was no question about where the line was between lots 1 and 2." And George Salot, a witness for plaintiff, testified that he drew the deed from Samuel Skaife to Jacques Pillard; that the parties came to his office together, and " Skaife said he had sold to Pillard that portion of his farm lying east of the Buncombe Road, and wanted to make a deed." This question was then asked of the witness and answered: " Q. Did Pillard say

anything with reference to what land he was expecting to buy? A. He said he was buying that portion east of the road. They both stated the same thing." The witness further stated that he went to the recorder's office, found the plat, and drafted the deed according thereto.

Following this, and down to the time of the present controversy, the respective parties occupied and cultivated up to the line of the road as traveled. In the year 1898, Samuel Skaife, still seised of said lot 2, died, intestate. In the course of the settlement of his estate, the Skaife farm, so called, consisting of said lot 2 and an eighty-acre tract and another lot, both lying to the west of said lot, was put up for sale at auction. The sale was conducted by one Meyer, and, as a witness, he testified that at the time of the sale he announced that according to the old deeds the farm contained one hundred and twenty-two and forty-five one hundredths acres, and " it was sold according to the recorded plat; that announcement was made at the time." The sale was made by the acre, and the farm was bid in by plaintiff at $38.35 per acre. Plaintiff paid part of the purchase price at the time, and requested that before paying the balance a survey be had to determine the exact number of acres. A survey was made by the county surveyor, both plaintiff and defendant being present, and from this it was developed that the location of Buncombe Road as shown on the plat, and as existing in fact, did not correspond; that, taking the road as existing to be the dividing line between the lots, lot 2 exceeded the acreage called for by the plat by one and forty-six one hundredths acres, while lot 1 fell correspondingly short. The deed to plaintiff was drawn at the time of the sale, and recites a consideration of $4,695, and the description contained therein is by lot and government numbers, without mention of the acreage. If plaintiff paid any sum additional to that named in the deed, the record does not disclose the fact. As already stated, defendant purchased lot 1 in the year following plaintiff's purchase, and in 1903 he

went across Buncombe Road, fenced in, and assumed to take possession of one and forty-six one hundredths acres of the land lying contiguous to the road. And this was done under the claim that the portion so fenced in constituted a portion of lot 1. This action to recover possession followed.

At the close of the evidence, plaintiff requested that the jury be instructed to find a verdict in his favor, and this was refused. We think the request should have been granted.

1. BOUNDARIES: acquiescence.
As the finding in the court below was in favor of defendant, we may properly enough first inquire what rights he had, if any, in the property. Now, as we read it, the record establishes beyond all cavil that by the deed to him Jacques Pillard acquired no interest in or title to any of the lands lying west of Buncombe Road. He bargained only for the lands to the east. Both parties understood these to comprise lot 1, and it is not material in any sense that the recorded plat made showing of an acreage in said lot somewhat greater than as actually existing. To all intents and for all purposes they fixed by their bargain the boundary line between lots 1 and 2, and as they bargained they made claim of right and occupied and cultivated accordingly for a quarter of a century. Surely, no one would contend that Jacques Pillard could have successfully asserted a claim of title to any portion of the lands lying west of the road as against Skaife, and, this being true, defendant can have no higher right. Even if the parties had not in their bargaining marked out the particular piece of land that was the subject of their bargain, they did so by their subsequent conduct, and from this it follows that the statute had stepped in long before the commencement of this action, and placed a ban upon future controversy over the matter of boundary lines. *Miller v. Mills Co.,* 111 Iowa, 654; *Buch v. Flanders,* 119 Iowa, 164.

To a case involving the features here presented, the doctrine that a grantor cannot hold adversely to his own grant, relied on by counsel for appellee, can have no appli-

cation.   This is an action of right, and by rule of the statute

**2. DEEDS:** plaintiff must recover, if at all, upon the
**description.** strength of his own title, and not upon
the weakness or absence of title in his adversary.   Does
the record show title in plaintiff to the strip of land
in dispute?   What has already been said leads with
certainty to an affirmative answer to this question.   As
we have seen, lot 2, according to the recorded plat, em-
braced all the land on the west side of the road.   Now, as
between these parties, there is no way in which materiality
can attach to the fact that by actual survey the lot contained
a somewhat greater acreage than as designated on the plat.
And as between the Skaife heirs, to whom the title descended,
and plaintiff, there is only one way in which such fact could
become material; that is, as related to the amount of consid-
eration paid or to be paid for the farm.   It was the farm that
was put up for sale, and lot 2, as shown by the plat, was a
part of the farm.   Plaintiff bought the farm, and, as we
have seen, the conveyance to him was by lot description.
When a recorded plat is referred to in a deed as related to
the matter of description, unless controlled by other facts
or circumstances, such plat is to be considered as furnishing
a true description of the property to be conveyed.   13 Cyc.
634, citing the following among other cases: *Brown v.
Taber,* 103 Iowa, 1; *De Long v. Olsen,* 63 Neb. 327 (88 N.
W. 512); *Bower v. Earl,* 18 Mich. 367; *Sanchez v. Church,*
114 Cal. 295 (46 Pac. 2).

So, also, by all the authorities, the description in a deed
is to be taken most strongly against the grantor.   13 Cyc. 628,
and cases.   Moreover, it appears from the evidence in the rec-

**3. SAME.** ord before us that the parties to the deed be-
lieved that it carried title to all the land west
of the road, and they acted on that belief.   If there was noth-
ing else, this would control.   13 Cyc. 627 citing *Knowles v.
Toothaker,* 58 Me. 172; *Monfort v. Stevens,* 68 Mich. 61
(35 N. W. 827); *Camden, etc., Co. v. Lippencott,* 45 N. J.

Law, 405; *Province v. Crow,* 70 Pa. 199; *Whitney v. Robinson,* 53 Wis. 309 (10 N. W. 512); *Evans v. Greene,* 21 Mo. 170. Whether they have adjusted the matter of the amount of the consideration cannot be of moment to any one but themselves.

It follows from what we have said that there must be a new trial of the case, and it will be remanded for that purpose.— *Reversed.*