W. A. GRIFFITH, Appellant, v. IRINDA MURRAY, T. N. MURRAY, ET AL., Appellees.

**Real property:** TITLE BY ACQUIESCENCE: EVIDENCE. Where a purchaser of land was informed by his grantor that the tract contained a certain number of acres, the west line of which was a creek, and the conveyance was by like description, under which he took possession, used and occupied the tract up to the creek for a long

series of years, he thus acquired title up to the creek by acquiescence, which does not of necessity involve adverse possession. Evidence held to show that defendant herein and his grantors intended to claim and did claim all of the lands in controversy during their entire possession.

**Same:**  TITLE BY ADVERSE POSSESSION.  To acquire title by adverse possession one, need not have both color of title and claim of right. Possession under claim of right, without color of title, held adversely for the requisite length of time will ripen into title.

**Same:**  BOUNDARIES: ACQUIESCENCE.  Occupancy of land up to a marked division line for the statutory period of limitations, without questioning its correctness, will defeat further controversy as to its true location.

**Same:**  BOUNDARIES: ESTOPPEL.  Where a grantee of land purchased a certain number of acres and supposed that the tract was bounded on one side by a creek, up to which he occupied and claimed for a long series of years, his statement, upon hearing that there were more acres in the tract as bounded by the creek, that his deed called for a certain number of acres and that was what he bought and was going to have, made to parties he had no reason to know were intending to purchase the excess land, or that they were relying on his statements, could not be made the basis of an estoppel against him to claim the land up to the creek, and · in favor of a purchaser knowing the extent of his claim and that of his grantor.

*Appeal from Lee District Court.*—HON. HENRY BANK, JR., Judge. ·

SATURDAY, JUNE 20, 1914.

ACTION to quiet title to certain real estate. Defendant T. N. Murray claimed to be the owner, under a certain deed and by adverse possession and acquiescence. There was a decree for the defendant T. N. Murray that he was the owner, and the plaintiff's petition was dismissed. Plaintiff appeals. —*Affirmed.*

*Seerley & Clark* and *Joseph R. Frailey,* for appellant.

*J. M. C. Hamilton* and *R. N. Johnson,* for appellees.

PRESTON, J.—The land in controversy consists of about fourteen acres east of the creek and west of the west line of the east seventy-eight acres of lots 4 and 5. The following plat will give a better understanding of the situation than a statement of it:

Plaintiff brought suit to quiet title. All defendants, except T. N. Murray, filed disclaimers. Plaintiff bases his claim on a quit-claim deed executed to him in 1909 by the heirs of James Peckham. This deed was executed more than forty years after James Peckham and wife had conveyed to Jacob M. Murray, by warranty deed, land described as follows: East parts of lots 4 and 5 in section 2—69—5, containing seventy-eight acres. It was supposed at that time, and for many years thereafter, that there were but seventy-eight acres east of the creek. Defendant T. N. Murray is a son of Jacob M. Murray, who died about the year 1908. Defendant had purchased and has deeds from the heirs and widow of Jacob M. Murray, deceased.

About 1908 or 1909, when one Harvey, who owned land west of the creek, had a survey made, it was discovered that there were more than seventy-eight acres of land east of the creek; that is, that there was a tract of fourteen acres east of the creek and west of the east seventy-eight acres of lots 4 and 5. Some of this surplus is accounted for by accretions.

Taking the measurements of the lots, as shown by the government field notes, there was more land than recited in the patents, and more than stated in the government plat; there is no claim, however, that James Peckham or Jacob M. Murray had any knowledge of this fact. Prior to 1867, James Peckham became the owner of the seventy-eight acres at least, and it is the claim of the defendant that, by the deed, he became the owner of all the land east of the creek.

The defendant T. N. Murray claims title to all of said lots 4 and 5 east of the creek on three grounds: First, that the deed of James Peckham to Jacob M. Murray, before referred to, and which was executed in 1867, conveyed all of said lots 4 and 5 east of the creek, and that the evidence shows that it was the understanding and intention of the parties to said deed that all land east of the creek was conveyed; second, that Jacob M. Murray, through whose heirs appellee obtained title, was the owner of said land by adverse possession, or acquiescence, and that appellant and his grantors were barred by the statute of limitations; and, third, that subsequent to the deed to Jacob M. Murray by James Peckham and wife, through whom plaintiff claims title, said James Peckham leased or rented from the said Jacob M. Murray the same land in controversy in this suit. This last fact is pleaded as an estoppel by the defendant, and he also claims it is a circumstance bearing on the question of the intention of the parties. To sustain his contention as to these three grounds, appellee shows that the original patent from the United States government to Peter Peckham, from whom James Peckham obtained title, recited that lot 5 contained 52.10 acres, according to official survey; that the original patent to lot 4 from the government recited that it contained sixty acres, according to official survey, and that the person to whom said patent was issued so conveyed the same to Peter Peckham in 1839; that on the original government plat said lot 5 was marked as containing 52.10 acres, and said lot 4 was marked as containing sixty acres, the two together containing 112.10 acres; that in 1843

Peter Peckham conveyed by deed to one Lansing the west one-third of lot 4, which would be twenty acres, as shown by the government patent and plat, and in the same deed conveyed land described as follows, fourteen and one-half acres on the east side of the west one-third of lot 4, bounded on the east by a creek, separating it from the remaining part east of said creek, all in section 2, etc. Thus Peter Peckham, having sold thirty-four and one-half acres out of the 112.10 acres contained in lots 4 and 5, as recited in the patents, and as shown by the government plat, had remaining 77.60 acres, practically seventy-eight acres.

As before stated, James Peckham became the owner of the land, and in 1867 negotiated with Jacob M. Murray for the sale of said land. At the time of this transaction, the testimony shows that James Peckham told Jacob M. Murray there were seventy-eight acres according to the government survey, the west line of which was the creek. With this knowledge as to the number of acres, James Peckham and wife conveyed to Jacob M. Murray the land under the description heretofore quoted. Upon the execution of the deed, James Peckham surrendered to said Jacob M. Murray the possession of all the land in said lots 4 and 5 east of the creek. The evidence shows, without any substantial conflict, that after the conveyance just referred to, and up to the time of his death, Jacob M. Murray used and occupied all of said land in lots 4 and 5 east of the creek, and claiming that his land extended west to the creek; that he farmed a part of the fourteen acres in controversy and pastured other parts of it; that during a part of the time there was a residence, sugar camp, and cane mill on a part of the land at least, and there was a river landing known as Murray's Landing; that he cut timber for wood and lumber; that about twenty-six years ago he fenced it, the fence on the west being next to the creek, always claiming and contending that he owned all of the land so fenced and used in lots 4 and 5 up to the creek on the west; that

1. REAL PROPERTY: title by acquiescence: evidence.

about four or five years after the conveyance James Peckham rented the land in controversy and the sugar trees thereon from his grantee and paid to said Murray a part of the proceeds as rent; that after James Peckham executed the deed he stated that he did not own a foot of land; witnesses testify that at the time of conveyance James Peckham stated to Jacob M. Murray that the land extended to the creek. Jacob M. Murray paid all the taxes which were paid on the land east of the creek until 1909, when plaintiff obtained his deed from the heirs, and for 1909, 1910 and 1911 plaintiff has paid the taxes on the fourteen acres. Before plaintiff received his deed, the defendant, who had then become the owner of the land inherited by him from his father and purchased by him from the other heirs, told one of the heirs of James Peckham, in the presence of plaintiff, and while plaintiff was negotiating for the purchase of the land, that James Peckham and wife had sold all the land east of the creek forty years before. For more than forty years, Jacob M. Murray claimed to be the owner of all the land east of the creek, and during that time no other person made any claim thereto.

These are some of the circumstances relied upon by the defendant to show that all adjoining proprietors and all persons interested acquiesced in the creek as being the west boundary of all the land east of the creek, and acquiesced in the creek as the true line, and that it was the intention of James Peckham, by the deed, to convey, and to Jacob M. Murray to receive and claim, all of the land east of the creek, rather than only the seventy-eight acres mentioned in the deed. Indeed, it is conceded by the appellant in argument that the evidence shows that the defendant and his father had used the land clear up to the creek practically for the last twenty-six years, and that the plaintiff would not be here contesting the title of the defendants were it not for two facts: First, the declarations of Jacob M. Murray; and, second, the estoppel pleaded by plaintiff, which will be hereafter referred to. And again, they say in argument:

It is not now our contention, and never has been, that if Mr. Murray had claimed to own to the creek, his title by adverse possession would not be good. We concede that his possession, his cultivation, his cutting timber, his fencing and general occupancy of the land up to the creek would have given him a perfectly good title by possession under claim of right, but not color of title, but for the declarations of said Jacob in regard to his claiming only seventy-eight acres.

There is evidence on behalf of plaintiff that, at the time the controversy arose in regard to the survey by Harvey, Jacob M. Murray was very much surprised that there was more than seventy-eight acres east of the creek, and did say, according to some of the witnesses, that he had bought seventy-eight acres, and that he claimed only seventy-eight acres under his deed, but these same witnesses admit that Murray also claimed in the same conversations that his land extended west to the creek, and that he claimed to the creek. Taking all the evidence together, and the acts and conduct of Jacob M. Murray, and of his grantor, James Peckham, we think it is clearly established that, notwithstanding such declarations, said Jacob intended to claim, and did claim, all the land east of the creek, and that he so claimed it during the time he used and occupied the same.

It is said by appellant that the defendant and his father did not have color of title and claim of right. It is not necessary that they should have had both. There may be a claim of right, without color of title, under which possession held adversely for the requisite length of time will ripen into title. But it is not so much a question of adverse possession in this case as it is the claim to the creek and acquiescence. Strictly speaking, the doctrine of recognition and acquiescence does not necessarily involve the question of adverse possession. In this case, the defendant bases his claim most strongly on the doctrine of acquiescence.

2. SAME: title by adverse possession.

As stated in one of our recent cases, this court is fully

committed to the doctrine that occupancy up to a marked
division line, without questioning its correctness, for the statu-
tory period of limitation, is such acquiescence
therein as to defeat subsequent controversy
as to its true location.    On this proposition

3. SAME: boun-
daries: ac-
quiescence.

see: *Miller v. Mills County,* 111 Iowa, 654; *Lawrence v. Wash-
burn,* 119 Iowa, 109; *Klinkner v. Schmidt,* 114 Iowa, 695;
*Kulas v. McHugh,* 114 Iowa, 188; *Axmear v. Richards,* 112
Iowa, 657; *Bradley v. Burkhart,* 139 Iowa, 323; *Kennedy v.
Niles,* 96 N. W. (Iowa) 772; *Keller v. Harrison,* 139 Iowa, 383;
Code, section 4230.    See, also, 1 R. C. L. 733, and cases;
*Edwards v. Fleming,* 83 Kan. 653 (112 Pac. 836, 33 L. R. A.
(N. S.) 923), and note.

In the case of *Lawrence v. Washburn, supra,* 119 Iowa,
at page 112, the court calls attention to what now appears
as section 4230 of the Code, which was enacted after the
decision in *Grube v. Wells,* 34 Iowa, 148.

The doctrine of recognition and acquiescence is now so
well established in this state that it is unnecessary to further
discuss the proposition, or to cite the many other cases on
the subject.    The contention of appellant, as his counsel states
it, is that the statute of limitations is not available unless the
party claiming thereunder has held possession of the land
for the statutory period, under color of title and claim of
right; that mere possession is not sufficient—the claim must
be as broad as the possession—that the mere belief that the
land owned by a party extends a certain distance, and occu-
pation thereunder, is not sufficient to constitute an adverse
possession such as will ripen into a title, if the intention was
to occupy only so much as was actually conveyed by the
instrument under which he claims (citing *Grube v. Wells,*
34 Iowa, 148, and other like cases).

We have already shown and hold that it was the intention
of defendant and his father, Jacob M. Murray, to claim to
the creek on the west, and that he did so claim, and held

possession. The doctrine of acquiescence seems not to have
been fully considered in the cases cited by appellant, and
they have been distinguished in later cases. Jacob M. Murray
was not a trespasser, but claimed the land to the creek in
good faith. If James Peckham was here now, in place of the
plaintiff, he would not be entitled to the relief claimed. We
are of opinion that the evidence fully sustains the claim of
defendant on the question of acquiescence, so that the other
questions of adverse possession, color of title, and claim of
right need not be further discussed.

The defendant also claims that it was the intention of
the grantor in the deed to convey all the land east of the
creek, and that this is shown by the conduct of the parties.
It is perhaps unnecessary to refer to this, but we should,
perhaps, do so briefly. It is the contention of defendant at
this point that in interpreting a deed it is the duty of the
court to ascertain the intention of the parties, and take into
consideration all the facts and circumstances known to and
surrounding the parties at the time of its execution. *Waldin
v. Smith*, 76 Iowa 652; *Craven v. Winter*, 38 Iowa, 479;
*Hoffman v. Port Huron*, 102 Mich. 417 (60 N. W. 831). That
a description in a deed is construed most strongly against
the grantor. *Quade v. Pillard*, 135 Iowa, 359. And that
the subsequent conduct of the parties may amount to a con-
struction of a deed, such as taking possession of and using
the land. *Foley v. Kane*, 53 Iowa, 64; *Railway Co. v. Mc-
Williams*, 71 Iowa, 164; *Quade v. Pillard, supra.*

We have already referred to the testimony upon which
defendant bases this claim, and we shall not refer to it further
than to say that, if it were a pivotal point in the case, we would
be inclined to hold that, taking all the circumstances together,
James Peckham did intend to convey by his deed all the
land east of the creek.

II. The plaintiff pleaded as an estoppel that, prior to
the purchase by him of the land in question, Jacob M. Murray,

the ancestor of the defendant, T. N. Murray, and the person
under whom the said T. N. Murray claims,
stated to different persons that he only claimed
seventy-eight acres described in the deed, and
that plaintiff relied thereon, etc. Knowledge of such state-
ments was conveyed to the plaintiff, and plaintiff claims
that said Jacob M. Murray stated to him (plaintiff) that
seventy-eight acres was what he bought, and that he was
going to have it. Appellant frankly states in argument that
the facts in regard to the estoppel are not as strong as they
might be, and that the vital question in the case is as to
whether defendant has maintained his defense of adverse
possession or acquiescence. Such alleged declarations made
by Jacob M. Murray, as testified to by the witnesses, are not
sufficient to constitute an estoppel. Such statements were
mere verbal declarations, and were not made with any knowl-
edge on the part of said Murray that the persons to whom
such declarations were made were claiming any interest, pres-
ent or future, in the land in question.

4. SAME: bound-
aries: estop-
pel.

In *Kirchman v. Standard Coal Co.*, 112 Iowa, 668, it was
held that it is well understood that one who knows, or has
reasonable ground to believe, that another is about to act in
reliance upon his statement with reference to his rights, or
on his omission to assert his rights, is estopped from setting
up any claim inconsistent with that which the latter has thus
been led to believe was the truth, but it was further said that
none of the cases cited, or which the court was able to find,
go so far as hold that a mere random statement, made without
any fraudulent intent, to one who, so far as the speaker
has any reason to know, is without present or prospective in-
terest in the matter referred to, will estop the speaker from
afterwards asserting, against the person to whom the state-
ment is made, any rights which he may have had, even though
such rights are inconsistent with this statement. See, also,
*Near v. Green*, 113 Iowa, 647; *Bliss v. Waterbury* (S. D.) 145
N. W. 435.

In the instant case, there is nothing in the evidence tend-

ing to show that the said Jacob M. Murray, deceased, at the time he made such declarations knew, or had reason to know, that any of the parties to whom such declarations were made, or in whose presence they were made, including the plaintiff, had any interest, present or prospective, or intended to purchase the land in question and rely upon such statements. The statements were simply to the effect that his deed called for seventy-eight acres, and that was what he wanted, but there is nothing in such declarations tending to show that he did not claim to the boundary line long theretofore established by recognition and by acquiescence. In fact, we have already shown that, by his other declarations and his acts and conduct, he did claim to the creek as his west boundary during all the years he occupied the land in controversy.

We have already referred to the fact that prior to the time when plaintiff received his deed to this land the defendant stated to one of the heirs, in the presence of plaintiff, that James Peckham had sold all this land to Jacob M. Murray forty years ago, and that defendant owned the land and was going to occupy every foot of it, and that his father had owned it ahead of him and occupied it.

The plaintiff himself testified in reference to this transaction that defendant told John Peckham, the heir just referred to, that he had no claim to this land. Prior to that time one Eliza Harvey, as plaintiff, brought an action against Jacob M. Murray, as defendant, to recover the fourteen acres now in controversy in this suit, and that said Jacob appeared therein and defended the suit by filing a motion and answer, and, as we understand the record, that case was dismissed.

Cases cited by the appellant on this question of estoppel are cases where statements were made with the intention of inducing another person to act, and cases of like character. They are not in conflict with the cases we have referred to.

We conclude that the decree of the district court was right, and it is—*Affirmed*.

LADD, C. J., and EVANS and WEAVER, JJ., concur.