MARY E. HELMICK, Appellee, v. DAVENPORT, ROCK ISLAND & NORTHWESTERN RAILWAY COMPANY, Appellant.

**BOUNDARIES:** Acquiescence—Acquiescence and Adverse Possession
1   **Contrasted.** Boundary lines may be established by recognition and acquiescence, independent of adverse possession, except the element of ten years' time. (Sec. 4236, Code, 1897.)

**BOUNDARIES:** Acquiescence—Railway Right of Way. The doctrine
2   of boundary lines by recognition and acquiescence for a period of ten years may be invoked to alienate from a railway company a portion of its right of way never in its possession. (Sec. 4236, Code, 1897.)

PRINCIPLE APPLIED: Action to quiet title. In 1899, a rail-

way company secured from S a right of way over a 10-acre tract, and at once fenced the right of way on the east. In 1899, S sold the tract to G, "except one acre sold to D. C. & E. Ry." In 1900, G sold to K, "except a strip 100 feet wide sold to D. C. & E. Ry." In 1901, the D. R. I. & N. Ry., defendant herein, by quitclaim, bought said right of way. In 1908, K sold said 10-acre tract to plaintiff herein, "except the right of way of the D. R. I. & N. Ry." G assured K and K assured plaintiff that said fence marked the east line of the railway right of way. This fence passed over an abandoned cellarway, and, in about 1900, the railway company insisted that K should fill up his part of this cellar before the company would fill up its part. The company put in a gate in this fence and later repaired it, at plaintiff's request. Plaintiff set out trees, cultivated up to the fence, as K had done, and erected on the strip afterwards in dispute an 8 x 10 frame tool house, with stone pillars, all in the belief that the right of way fence was on the true line. In 1913, the defendant moved its said fence 20 feet to the east, and thereby for the first time took possession of the strip in controversy. This action was commenced in January, 1914. *Held*, the line of the original fence was the true boundary line by acquiescence.

**BOUNDARIES:** Acquiescence—Ten-Year Period—"Tacking On"
3  **Possession of Prior Grantor.** One who purchases land with special reference to the correctness of the boundaries as shown by the then existing fences may, in an action to establish a boundary line by acquiescence, tack his possession to the period of his grantor's possession, in order to make the ten years' possession necessary in such cases. (Sec. 4230, Code, 1897.)

PRINCIPLE APPLIED: See No. 2.

*Appeal from Scott District Court.*—WILLIAM THEOPHILUS, Judge.

FRIDAY, MARCH 10, 1916.

ACTION in equity to quiet title to a strip of ground 20 feet wide, on the west side of plaintiff's 10 acres of land, which defendant claims is the east 20 feet of its right of way. There was a decree for plaintiff, and the defendant appeals.— *Affirmed.*

*Lane & Waterman,* for appellant.

*Scott & Scott* and *Helmick & Boudinot,* for appellee.

Preston, J.—The facts are undisputed. Defendant introduced no evidence, and the trial court found the facts stated in the petition to be true. Plaintiff claims title to the disputed strip of land by adverse possession, by recognition and acquiescence in the fence's being the boundary line, and by equitable estoppel. The question is: Can the doctrine of adverse possession, or recognition and acquiescence in a boundary line, or of equitable estoppel, be invoked to alienate from a railroad company a strip of land claimed as a part of its right of way, but never in its possession?

The strip of land in dispute lies east of defendant's right of way as originally fenced by defendant's grantor when building the road, in 1899, and is claimed by plaintiff as a part of land purchased by her lying between said right of way and the Mississippi River. The fence was built by defendant's grantor, the Davenport, Clinton & Eastern Railway Company, in 1899, and presumably said fence was placed on the east boundary line of its right of way. The possession of said strip was never in defendant or in its said grantor until the defendant moved said fence east 20 feet, in October, 1913. Defendant received its right to its right of way by quitclaim, and only succeeded to the rights of its grantor at the date of the deed, to wit, July 30, 1901. This action was brought in January, 1914. The possessory rights to said disputed strip remained in the common grantor, Samuelson, until he conveyed it to one Gamble, and Gamble conveyed to plaintiff's grantor, Kasso, expressly pointing out to Kasso that the said fence was the east boundary line of said right of way, and Kasso went into possession of said strip, cultivating up to the said fence as the boundary line. Kasso sold the disputed strip to plaintiff, expressly stating to her that he was selling her the land between said fence and the Mississippi River. The evidence shows that defendant regarded the fence as its east boundary line, by insisting that Kasso should fill the east half of an old cellar across which said fence extended, as a prerequisite to defendant's filling the west half. Defendant

also constructed a gate therein, and later repaired the fence, at the request of plaintiff. Plaintiff made permanent improvements on the disputed strip by setting out trees and building a tool house thereon, and had a garden plot there. This tool house is described as a square building, with a gable roof, in which plaintiff kept her tools to be used in gardening and taking care of the ground. It is a small building, approximately 8 or 10 feet square and 10 feet high, built of frame, with boards running up and down, and standing on stone pillars. These improvements were made and expenses incurred by plaintiff, believing said fence to be the true boundary line between her land and the defendant's said right of way.

We should refer here to provisions in the deeds from plaintiff's grantors. Samuelson deeded to Gamble in 1899, ''except one acre sold to D. C. & E. Railway''; Gamble deeded to Kasso in 1900, ''except a strip one hundred feet wide, sold to the D. C. & E. R. R.'' In February, 1908, Kasso deeded to plaintiff the same 10-acre strip, ''except the rights of way of the D. R. I. & N. W. Railway Company, the public highway, and the I. & I. Company.''

1. It is contended for appellant that a party advised of the existence of a railroad right of way must at his peril learn of its extent and cannot obtain title to a part of it by adverse possession, citing *Barlow v. Chicago, R. I. & P. R. Co.*, 29 Iowa 276; *Slocumb v. Chicago, B. & Q. R. Co.*, 57 Iowa 675; *Chicago, M. & St. P. R. Co. v. Snyder*, 120 Iowa 532; *Chicago, M. & St. P. R. Co. v. Hanken*, 140 Iowa 372. They contend further that, where a party takes a deed that excepts a railroad right of way and holds possession of a part of such right of way for a period of less than ten years, he cannot tack the term of his grantor's possession onto his own in order to make the 10-year period. *Sheldon v. Michigan Cent. R. Co.*, (Mich.) 126 N. W. 1056; *Messer v. Hibernia, etc.*, (Calif.) 84 Pac. 835; 1 Cyc. 1007, and note. And to support its claim that a rail-

road right of way is held in trust for the public and that private title thereto cannot be secured through adverse possession, it cites *Northern Pacific R. Co. v. Townsend,* 190 U. S. 267. And they cite *Griffin v. Brown,* 167 Iowa 599, to support their claim that title by acquiescence can only be obtained where both owners assent to a line as the boundary, and they cite *Bridges v. Grand View,* 158 Iowa 402, to the proposition that planting of trees and shrubs without objection from the adjoining owner affords no ground of estoppel as against him.

In the *Slocumb* case, premises adjacent to a railroad were conveyed to plaintiff, "subject to any right of way said railroad may own over the same." The railroad company had previously become entitled to 35 feet in width from the center line of its track as right of way, but there was nothing of record showing the extent of such easement. The railroad was in operation at the time, and a fence had been constructed on one side near the track, and it was held that plaintiff was advised by the presence of the railroad and the recitals in the conveyances that the railway company claimed a right of way over the premises, and by inquiry could have learned the extent of that right; that she must be regarded as having notice of all the facts which due and timely inquiry would have elicited. And it was held in that case that, under the facts thereof, the plaintiff, being affected with notice of the acquisition of an easement over the premises by a railroad company, could not acquire title to any portion of the right of way by adverse possession. In that case, the question of acquiescence and title by estoppel was not raised.

In the *Barlow* case, a right of way was conveyed by deed to the railway company in 1853, which another railway acquired in 1866, and then constructed its road. It was held upon demurrer to the answer that the right of way was not affected by nonuser and that the statute of limitations did not bar the defendant's right, notwithstanding the fact that the answer alleged that the land over which the right of way

was claimed had been fenced during the whole period of 13 years and was used for agricultural purposes.  It was held that plaintiff's possession was not adverse to nor inconsistent with the right of defendant to occupy the whole of the right of way whenever it became necessary or desirable for it to do so.  The court did not permit the landowner to invoke the doctrine of adverse possession because there was no use of the premises adverse to defendant's right.

In the Milwaukee case against Snyder, the court held that there was no adverse possession, for the reason that when the company constructed its road across defendant's lot, it allowed defendant to retain a large strip of it, and defendant did nothing to indicate any ownership hostile to plaintiff's right of way.

In the case of *Chicago, M. & St. P. R. Co. v. Hanken,* the court affirms the doctrine of acquiescence in boundary against a railway company as to depot grounds.

In the *Townsend* case, 190 U. S. 267, the court had under consideration an act of Congress from which the Union Pacific Railroad Company derived its way in a grant from the government, and such is the fact in *Union Pacific R. Co. v. Laramie Stockyards Co.,* 231 U. S. 190; *Union Pacific R. Co. v. Snow,* 231 U. S. 204, and *Northern Pacific R. Co. v. Ely,* 197 U. S. 1, 5.  In the last named case, it was said:

"We there ruled (referring to the *Townsend* case) that individuals could not, for private purposes, acquire adverse possession, under a state statute of limitations, any portion of a right of way granted by the United States to a railroad company in the manner and under the conditions that the right of way was granted to the Northern Pacific Railroad Company.  At the same time, it was not denied that such a right of way granted through the public domain within a state was amenable to the police power of the state."

This last sentence would seem to indicate, though of course it does not so hold, that adverse possession might be acquired under a state statute as against a company which has

acquired its right through public domain. We do not understand appellee to rely seriously on the question of adverse possession, but they claim that there is a difference between adverse possession and acquiescence because of Sections 4230-4233, and 4236 of the Code, in reference to acquiescence, although they claim that, under the authorities, one of the objects of the statute is to compose controversies, and they cite Section 3447 of the Code that adverse possession for a period of 10 years matures title in the holder of lands, and they cite *Sharon v. Tucker*, 144 U. S. 533, 548.

2. Since, as stated, plaintiff does not rely so strongly on the question of adverse possession, we may turn to the question of acquiescence. Under the authorities, we think

1. BOUNDARIES: acquiescence: acquiescence and adverse possession contrasted.

boundary lines may be established by recognition and acquiescence, independent of adverse possession, except ten years' time. We said in *Miller v. Mills County*, 111 Iowa 654:

"But the great current of authority sustains our conclusion that, in the absence of other controlling circumstances, the inference is conclusive that the division line between adjoining tracts definitely marked by the erection and maintenance of a fence or other monuments, recognized by the owners as such, and up to which they have occupied and cultivated the land on either side for more than 10 years,— the statutory period of limitations,—is the true boundary between them."

See, also, *Griffith v. Murray*, 166 Iowa 380.

The distinction between the basis of title by acquiescence and title by adverse possession was pointed out in the *Mills County* case, where we said, in substance, that while possession of an adjoining owner's land by mistake and without intent to assert title thereto is not adverse, yet acquiescence in a certain line, with possession up to it, is conclusive evidence of an agreement on it as the true line, and will bind the parties concerned.

See, also, *Axmear v. Richards*, 112 Iowa 657; *Bradley v.*

*Burkhart,* 139 Iowa 323; *Lawrence v. Weiss,* 163 Iowa 584; *Schoen v. Harris,* 162 Iowa 321.

In *Keller v. Harrison,* 139 Iowa 383; *Quinn v. Baage,* 138 Iowa 426, and the *Griffith* case, *supra,* it was said that an agreement to a boundary is to be inferred by long acquiescence. Under these authorities and the facts of this case as heretofore set out, we think the doctrine of acquiescence applies. Under the evidence, both parties did assent to the fence as the boundary.

3. In view of our holding in Paragraph 2 of the opinion, we deem it unnecessary to go into the question of estoppel, but, as bearing upon the question, the following cases may be cited: *Hanson v. Gallagher,* 154 Iowa 192; *Hall v. Doran,* 13 Iowa 368; *Woodward v. Barr,* 128 Iowa 727; *Axmear v. Richards, supra.* As applied to a city or town, see *City of Eldora v. Edgington,* 130 Iowa 151.

4. The next question is: Does the doctrine of acquiescence apply to a railroad company? Reference is made to this question in Paragraph 1 of the opinion, as applied to the doctrine of adverse possession. Some of the

2. BOUNDARIES: acquiescence: railway right of way.

cases cited later in the opinion hold that the doctrine of adverse possession does apply to a railroad company, and others hold that the law as to acquiescence applies. In so far as the question relates to a railroad company, we see no difference between the question of adverse possession and acquiescence. We think the same rules of law apply to questions of boundary by acquiescence between a natural person and a railroad corporation. In the case of *Chicago, M. & St. P. R. Co. v. Hanken,* 140 Iowa 372, at 377, before referred to, it was said:

"Even though neither defendants nor plaintiff were bound to erect the division fences, they were erected, and have been maintained, and this was notice to all of them of the claim that they marked the boundary between the depot ground and the several lots. No objection was raised thereto for more than 20 years, and from its long silence plaintiff

(the railway company) must be presumed to have acquiesced in this claim."

See, also, *Chicago, R. I. & P. R. Co. v. Allfree,* 64 Iowa 500.

In *Pittsburgh, etc., R. Co. v. Stickley,* 155 Ind. 312 (58 N. E. 192) it was said:

"If one occupies adversely for 20 years land owned by a railway company, the statute of limitations should raise the presumption of a grant, for the company holds its lands for private gain, as a private proprietor. The state confers the power of eminent domain to enable railway companies to perform efficiently their duties as common carriers. But it is not apparent why the state should be concerned in preventing investors in railway stocks from sustaining loss through the negligence of their agents."

There would seem to be no reason for exempting a railroad company from the operation of the statute of limitations. Its right of way, however it may be devoted to public use, remains private property. Its officials are not public officers in any sense; its object is private gain. Sovereign rights are not involved. None of the considerations which render the application of the doctrine adverse to public rights inexpedient and unwise are here present, and it is difficult to see why the same rule as that governing individuals and private corporations should not here control.

5. It is next contended by appellant that, because plaintiff has not herself had possession of the strip of land for the statutory period of 10 years, she may not make the term 10 years by tacking her possession to that of Kasso, her grantor, because plaintiff's deed expressly excepted the right of way, and therefore tacking is not allowed; that there is no privity of estate between plaintiff and Kasso because the deed of the latter to plaintiff did not pretend to include the disputed tract. While this point was not directly raised in the case of *Griffith v. Murray,* we did say

3. BOUNDARIES: acquiescence: ten-year period: "tacking on" possession of prior grantor.

in that case that this court is fully committed to the doctrine
that occupancy up to a marked division line without ques-
tioning its correctness, for the statutory period of limitation,
is such acquiescence therein as to defeat subsequent con-
troversy as to its true location.

Appellant relies on the case of *Sheldon v. Michigan Cent.
R. Co.*, (Mich.) 126 N. W. 1056; but in a subsequent case by
the same court (*Gildea v. Warren*, [Mich.] 138 N. W. 232),
the question in regard to exception in a deed is discussed as
against parol transfer of possessory rights. In the *Sheldon*
case, the court said:

"It clearly appears from this record that there is no
evidence of any parol permission, or authorization of any
kind, given by the grantor Bell to the complainant, to take
the place of the said Bell in the wrongful possession which
Bell held of the strip of land in controversy in this case. Nor
is there any evidence in the record of any parol permission,
or authorization of any of the grantors in the deeds herein-
before referred to, to their grantees, to take the places of
their grantors in the wrongful possession of said described
strip of land. The record also shows that there was no parol
agreement, understanding, permission, or authorization re-
specting the premises which complainant's grantor had held,
or would deliver; and this applies, not only to the strip of
land in dispute, but also to that conveyed in the deed. The
record shows that complainant took possession. There is not
a syllable of any verbal authorization of delivery whatever.
. . . It is not necessary for us to decide whether any oral
agreement to surrender a wrongful possession to the successor,
so that where the continuous possession exists 15 years, would
defeat an action to recover possession by the owner. Not a
scintilla of evidence is shown in this record of any parol
transfer of Bell's possessory rights to the strip of land in
litigation, and what is true as between Bell and the complain-
ant is equally true as to all prior grantors."

But in the instant case, appellee did inquire as to the

extent of the land she was buying. She was shown the boundary line, to wit, the fence of the railway company. She went into immediate possession. The same thing occurred when her grantor, Kasso, bought. The case comes within *St. Louis S. W. R. Co. v. Mulkey*, (Ark.) 139 S. W. 643; *Clithero v. Fenner*, (Wis.) 99 N. W. 1027; *Gildea v. Warren, supra*.

Furthermore, the question of tacking peculiarly arises in adverse possession. By our statute, Section 4230, Code, 1897, it is provided that acquiescence by either of the parties, or their grantors may be put in issue by the plea. Section 4236, Code, 1897, provides, in substance, that if the boundaries have been recognized or acquiesced in for the statutory period of limitation, they shall be established. And the 10-year period is the only part of adverse possession required, where acquiescence of boundary line is raised. As we said in *Griffith v. Murray*, 166 Iowa 380:

"Strictly speaking, the doctrine of recognition and acquiescence does not necessarily involve the question of adverse possession."

The decree of the district court was right, and it is therefore—*Affirmed*.

Evans, C. J., Deemer and Weaver, JJ., concur.