JOHN LAMMERS, APPELLANT, v. P. C. NISSEN AND OTHERS, APPELLEES.

1. **Riparian Rights**: ACCRETIONS. An accretion to land is the imperceptible increase thereto on the bank of a river by alluvion, occasioned by the washing up of sand or earth, or by direliction as when the river shrinks back below the usual water mark; and land so formed by addition belongs to the owner of the land immediately behind it.

2. ———: PUBLIC LANDS: MEANDER LINES. Although, as to public lands of the United States, a meandered line is generally considered as following the windings of a stream, yet the question whether it does so or not may be determined by evidence *aliunde*. The mere fact that it is run and designated upon the plats as a meandered line is not conclusive against the government.

3. ———: ———: ———. An entry of government land, bounded by a meandered line, does not include land lying at the time between such meandered line and the bank of the river.

THIS was an appeal from a decree dismissing plaintiff's petition rendered by Hon Samuel Maxwell, sitting in the district court of Cedar county.

It was a petition in equity, filed by the appellant, against P. C. Nissen, Henry Filber, Peter Johnson, and Mrs. Christina Meng, widow of Jesse P. Meng, deceased. The plaintiff alleges, that on the 17th day of July, 1861, he entered at the United States Land Office, among other property, lot one in section twelve, in township thirty-three, range one east, situated in said county of Cedar, and on the 5th day of December, 1861, received a patent therefor; that the lot bordered on the Missouri river, and since the date of his entry a large body of land has formed thereon by accretion, which has been covered by timber, and is valuable; that the defendants for the purpose of defrauding him out of said property, acquired by these accretions, by fraudulent misrepresentations procured a fragmentary survey thereof to be made by the United States; that the defendants have entered the

same at the United States Land Office, and received patents therefor; that plaintiff is still the owner of most of this land, but a part thereof he has conveyed with full covenants of warranty; that the defendants have cut and removed, and still threaten to cut and remove timber therefrom. The prayer is for an injunction restraining the defendants from cutting and removing this timber, and that the titles claimed by them to parts of said land, may be cancelled in order to remove the cloud cast upon the plaintiff's title.

Separate answers were filed by the defendants, but on the 20th of November, 1874, they joined in an amended answer, in which they deny that the lot one bordered on the river; and that since the purchase, large accumulations of land have formed thereon by accretion, and they say that at the time of plaintiff's purchase, there was land between the boundary thereof and the river; that in the original survey, the meander line was run along the bank of an ancient slough and not the bank of the river, leaving a tract of one thousand acres between the line and the river, not subject to overflow above high water mark, and covered with a dense growth of cottonwood and other timber, which land belonged to the United States, and formed no part of lot one; and from the original survey to the fragmentary survey, in 1869. it was recognized by the plaintiff, and adjoining settlers, as the boundary line of the lot, and the plaintiff never claimed it until the survey in 1869. This survey was made by the proper officers in June, 1869, and plats thereof made and filed in the United States Land Office, and the defendants have become the owners of the several parts of the land in controversy by pre-emption purchases from the United States.

On the trial, the plaintiff introduced his patent, with maps and field notes of the surveys, and a large amount of testimony was taken orally and by deposition, and

embodied in the transcript brought here. It is too voluminous for publication, nor is it necessary to make any statement of it in detail, beyond what is alluded to in the opinion.

It appeared, however, from the maps filed that the original survey, made by Cook in November, 1858, showed the meander line as running along the bank of the Missouri river, and no reference is made to any land lying *outside* of the meander, but the parcel of land entered by the plaintiff, as lot one, of section twelve, is represented as immediately adjacent and bounded by this line. It was also shown that the government made a special survey of this fractional township in 1869, and from the maps and field notes thereof, it appears to include a large tract of land, lying east of the "meander line" of the original survey. The situation of this land will better appear by a reference to the adjoining map of the special survey, which also shows the original meander line run by Cook in 1858.

In the court below the finding was in favor of the defendants, and a decree was rendered dismissing plaintiff's petition. He appeals.

*J. M. Woolworth*, for appellant.

The questions raised upon the record are, whether the entry by the appellant of lot one, gave him the land beyond the meander line on the river side? Whether, if it did, it also gave him all land to the river which was surveyed, and whether the accretions made after the entry also belonged to him.

*First.*—I insist as a matter of law, that in the survey of the public lands, the meander line upon rivers, whether navigable or non-navigable, is not the boundary of the land included within the lines marking a tract, but the tract extends to the bank of the river, without regard to the meander line. There are diverse

decisions on this question, but as it is one of federal law the decisions of the United States supreme court are conclusive upon it. That court held the law as we claim it, in the *Railroad Co. v. Schurmeir*, 7 *Wall.*, 272, affirming the judgment of the supreme court of Minnesota, in the same case, 10 *Min.*, 82. This case is on all fours with this. This view was also taken in *Kraut v. Crawford*, 18 *Iowa*, 549. *Lorman v. Benson* 8 *Mich.*, 18. *Rice v. Ruddiman*, 10 *Ib.*, 125. *Gavit v. Chambers*, 3 *Ohio*, 496. *Walker v. Board of Public Instruction*, 16 *Ib.*, 545.

And still further, the field notes and plat, showing the survey, having been duly approved, are binding on the government as to where the bank was, and as to the character of the land on the river-side of the meander line. *Bates v. The Illinois Central Railroad Co.*, 1 *Black.*, 204.

*Second.*—From what has been said, it clearly appears that had the entry of the appellant been made at the time of the survey, or while the nature of the land remained as at the time of the survey, he would have taken whatever there was on the river-side of the meander line. Now we submit, the testimony does not show that any change had taken place at that time. That question of fact we submit upon the record. But as matter of law, we insist that had such change taken place, his rights would be unaffected by it. And this appears from a very simple view of the matter. The government had made a survey by which it was bound. It sold the land according to that survey, expressly referring to the plat for description. It must then be held to its grant.

Suppose a private party owned a tract of land which he had platted, and sold a lot therein "according to the plat." Undoubtedly the purchaser would take whatever the plat indicated. A government grant is governed by the same rules.

*Third.*—Whatever land was formed by accretion, subsequent to the appellant's entry, became his upon common law principles, and upon the decisions of the federal courts, as applied to public lands lying upon the banks of the great rivers. The doctrine of the common law is plainly stated in 2 *Black. Comm.*, 261–2. And it has been applied to the public lands in many cases. *Railroad Co. v. Schurmeir, supra. Bates v. Illinois Central Railroad Co., supra. Banks v. Ogden,* 2 *Wall.,* 58.

*W. H. Powell, and Bartlett & Tripp,* for Appellees.

I. The government holds right of ownership of all lands unsurveyed, as well as those left out in the course of an original survey, from any cause, as those not yet reached in the course of its work. See the several acts of Congress donating swamp lands to the states. *Lester Land Laws.*

II. The returns and field notes of a survey are *prima facie* the best guides for the sale of lands. They are only *prima facie,* and do not overthrow the fact of mistakes, errors, or omissions, as to lands outside of lines actually run. If the mistake within the survey be greater than instructions permit, the work is rejected. If mistakes or omissions made are corrected in the field notes, so as to come within instructions, then the act of May 30, 1862, is expressly provided. Meander lines bounding land and locating river or swamp, may be correct as to the former, and incorrect as to the latter.

III. The United States patent calls for a definite piece or parcel of land according to the survey and plat. If it calls for a section, it is a mile square; if a lot or fraction, it calls for a parcel bounded by lines, the terminations of which are monuments fixed by the surveyor, and the contents calculated even to hundredths of an

acre.   By what then is the grantee bound, except by the lines established?   *Kent's Comms., Riparian Rights. Canal Com'rs v. The People*, 5 *Wend.*, 423.   *McClintock v. Rogers*, 11 *Ill.*, 279.   *Jones v. Johnson*, 18 *How.*, 150.   *Walker v. Smith*, 2 *Penn. State*, 43.   *Martin v. Curlin*, 19 *Wis.*, 454.   *Bates v. Illinois Railroad*, 1 *Black.*, 204.   *Parker v. Kane*, 22 *How.*, 1.   But the case of *Granger v. Swartz*, 1 *Woolworth Cir. Court Reports*, 88, is almost precisely similar to the one before us, and contains a correct statement of the law, which when applied to this case, must affirm the decree of the court below.

GANTT, J.

The plaintiff in this case claims the land in controversy, as accretions formed on the bank of the river, by which he alleges his land was bounded.   The first question suggested to the mind by the issues raised between the parties is:   What is an accretion to land?   It seems to be a settled doctrine at common law, that an accretion to land is the imperceptible increase thereto on the bank of a river by alluvial formations, occasioned by the washing up of the sand or earth, or by direliction as when the river shrinks back below the usual water mark; and when it is by addition, "it should be so gradual that no one can judge how much is added each moment of time."   And when the formation of land is thus imperceptibly made on the shore of a stream, by the force of the water, "it belongs to the owner of the land immediately behind it, in accordance with the maxim, *de minimis non curat lex*."   It is said that "no other rule can be applied on just principles," for the reason that "every proprietor whose land is thus bounded, is subject to loss by the same means which may add to his territory, and as he is without remedy for his loss in this way, he can-

not be held accountable for his gain." In *Granger v. Swartz*, 1 *Woolworth, C. C. R.*, 91, it is held that, if when the entry of public land is made, the banks of the river, at any ordinary stage of water, was in fact where the meander line was represented by the survey, and land has since been formed by accretion, it will become the land of the person who has title to the land immediately behind it. *New Orleans v. United States*, 10 *Peters*, 717.

Again, another inquiry involved in the consideration of the case is as to what is the effect which a meandered line, purporting to have been run along the bank of a stream, may have in regard to land at the time lying between it and the bank of the stream, and remaining unsurveyed. And in respect to this inquiry, I think it sufficient to observe that as to public lands of the United States, conceding the rule to be well settled that a meandered line bordering on the bank of a stream, is not to be considered as the boundary of the tract, but simply as defining the sinuosities of the banks of the stream, and as a means of ascertaining the quantity of the land in the fraction subject to sale, yet the question whether such line does in fact define the sinuosities of the bank of the stream or not, is one which may be determined by evidence *aliunde*. The mere fact that it is run and is designated upon the plats as a meandered line, certainly cannot be conclusive in the matter. To establish the doctrine that such meander line is conclusive, would estop the government from disposing of lands left unsurveyed between such line and the bank of the stream; it would prevent the correction of mistakes made by surveyors in such case, and would be in direct conflict with the well settled rule of law defining what is an accretion to land. In *Granger v. Swartz, supra*, the principle is enunciated that if between the meander line, by which the government survey was made, and the

bank of the river, there is, at the time, a body of swamp
or waste lands, or flats, on which timber and grass grew,
and horses and cattle fed, then the patents for the lands
surveyed would not cover this land, but must be confined
to the actual limits of the meander line, and include no
more.

The remaining question is one of fact, in the conside-
ration of which the law as stated in respect to accretions
and meandered lines must apply. It is this: Has the
land in controversy been formed by gradual alluvial
formations on the bank of the river, since the original
survey of the meander line was made in November, 1858?
All the proof taken in respect to the nature and charac-
ter of this land, at the time the original survey was
made, and since that time, is found in the testimony of
five witnesses examined on the part of the plaintiff and
twelve on the part of the defendants. There is some
conflict in the testimony of some of these witnesses; it,
however, appears very clear that the weight of the evi-
dence establishes the fact that the land in controversy
was not formed by accretions since the original survey
was made. One witness, examined on the part of plain-
tiff, says that in 1857–1858, this land was covered with
vegetation and a growth of very young trees; and P.
Clark, whose deposition was taken on the part of defend-
ants, says that he resided in the county in which the
land is situate, from 1858 till 1865; that he was present
when a portion of the original line was run, being inter-
ested at the time in relation to a claim which was
bounded by the meandered line; that at this time he
estimated there were from eight hundred to one thou-
sand acres of land between this line and the bank of the
river, of a similar character to that inside the meander
line, and covered with a growth of cottonwood and
willows, and that there were cottonwood trees from six
to eight inches in diameter; he also says that, at the

time, he called the attention of the surveyor to these facts, who replied that he supposed that the slough (on the west side of which he was running the line), was a portion of the river as it had some water in it, but that it made no difference, as the land lying outside the meandered line would go to the state as swamp lands. The testimony of this witness is corroborated by that of ten others. The slough mentioned by the witness extended only a part of the distance along the meandered line.

Upon a close examination of the evidence, we think it clearly establishes the fact, that at the time the meandered line was made in 1858, the nature and character of the land, on both the west and east side of that line, in respect to both soil and topography, were similar, except that some portions on the east side were somewhat lower than on the west side; that at least a very considerable portion of that part now in controversy was covered with vegetation and a growth of cottonwood and willow timber, and that its surface was above the ordinary stage of water in the river.

We are of opinion, that upon both the law and the facts of the case, the finding and decree of the court below are right, and should be affirmed.

DECREE AFFIRMED.

CHIEF JUSTICE LAKE, concurred. MAXWELL, J., did not sit.