De Long v. Olsen.

---

ALFRED D. DE LONG, RECEIVER OF THE EAST OMAHA LAND COMPANY, APPELLEE, V. ALFRED. OLSEN ET AL., APPELLANTS.

FILED DECEMBER 18, 1901. No. 10,474.

Commissioner's opinion, Department No. 2.

1. **Equity: EJECTMENT: JURY.** The objection that an action which is begun in equity should have been in ejectment and tried by jury, must be made before trial. It is too late to raise that question for the first time after the cause has been appealed to this court.

2. **Deed: DESCRIPTION: ACCRETIONS: MEANDER-LINE.** A deed which describes land conveyed as "all accretions of lands and parcels of lands belonging to government lot number ten (10) in section number one (1) in township number fifteen (15) north, range number thirteen (13) east; said accretions lying south of the meander-line of the state of Nebraska, according to the government survey," is not void for uncertainty of description.

3. **Accretion:** MISSOURI RIVER. The law of accretion applies to the Missouri river, notwithstanding that, owing to the swiftness of its current and the softness of its banks, the changes are more rapid and extensive than in most other rivers. *Nebraska v. Iowa,* 143 U. S., 359, 12 Sup. Ct. Rep., 396.

4. **Official Plat:** GOVERNMENT SURVEY: RIVER-BOUNDARY: PATENT: DEEDS. Where the official plat of the survey of government lands shows a river as one boundary of a certain lot, a subsequent patent for the lot, describing it by number, and referring to the plat on which it is marked as containing a certain amount, and deeds, describing the lot by number, passes all accretion to the lot up to their respective dates. *Jefferis v. East Omaha Land Co.,* 134 U. S., 178, 10 Sup. Ct. Rep., 518.

APPEAL from the district court for Douglas county. Heard below before FAWCETT, J. *Affirmed.*

*Silas Cobb,* for appellants.

*Charles J. Greene, Ralph W. Breckenridge* and *J. C. Kinsler, contra.*

SEDGWICK, C.

This action was begun by this plaintiff in the district court for Douglas county to determine its title and right of possession of certain lands in Douglas county which it alleges are accretions of land and parcels of land to government lots 10 and 11 in section 1, and government lot 1 in section 12, township 15, range 13 east of the sixth P. M., and to quiet plaintiff's title in the lands, and cancel certain deeds which the defendants have obtained, purporting to convey the same. The petition alleges that on July 5, 1859, the government of the United States patented lots 10 and 11 to one Francis Smith, and in 1863 patented lot 1 to one Byron Reed; that in 1856 the government made a survey and established a meander-line of the west bank of the Missouri river across said sections 1 and 12, and that the said meander-line formed a boundary on one side of the said lots 10, 11, 1, and that the bank of the river at that place remained substantially the same until the lots were patented by the government as before stated, and that after-

wards, by washings of the river, large accretions were formed to the said lots from year to year, and afterwards, in 1886, this plaintiff, through mesne conveyances from the said Francis Smith and Byron Reed, became the owner of all accretions to the said lots, and that plaintiff, upon obtaining the title to the said accretions, took possession of the same, and has made valuable improvements thereon at an expense of a million dollars, and has held possession uninterruptedly until these defendants wrongfully and forcibly took possession on the 23d day of August, 1889; and that in 1889 one Maddocks took possession of a part of the lands upon said accretions, and afterwards abandoned such possession, and in July, 1889, quitclaimed the land in dispute to the defendant Olsen, who subsequently conveyed certain interests in the land to his codefendants herein, and the defendants are claiming and occupying the lands. The defendants admit the alleged patent from the government and the conveyances alleged in the petition, but deny that the lands claimed and occupied by the defendants are accretions to the said lots 10, 11 and 1, and deny that any accretions passed with the lots by said conveyances. The district court entered a decree in favor of the plaintiff, confirming and quieting its title, and enjoining the defendants from interfering with the land. From this decree the defendants have appealed to this court.

1. The defendants insist that the plaintiff can not maintain this action in equity, but its proper remedy, if it has any, would be by suit in ejectment. There is no merit in this contention. Accretions to real estate are not within the record description of the land to which they accrued. The owner must establish his title by evidence outside of the public records. He must show the changes of the river by which the accretions were formed, and establish the description and limits of the land claimed, and equity affords his only adequate remedy. Moreover, the defendants did not raise this question in their answer, and they can not raise it for the first time in this court. *Snowden v. Tyler,* 21 Nebr., 199.

2. It is insisted that two of the deeds under which the plaintiff claims are void for uncertainty. The description in one of the deeds is as follows: "All accretions of lands and parcels of lands belonging to government lot number ten (10) in section number one (1) in township number fifteen (15) north, range number thirteen (13) east; said accretions lying south of the meander-line of the state of Nebraska, according to the government survey." When this lot was surveyed and platted by the United States government, the Missouri river constituted its southern boundary, and after that time a body of land had been formed against its southern boundary by the action of the river. The accretions to lot 10 then would lie between the south line of said lot and the river, and would be bounded on the east by the accretions to the lot lying east of it on the meander-line, and on the west by the accretions to the lot lying west of it on the meander-line. These lines, then, from the meander-line to the river, dividing the accretions to the several lots, could be definitely located by established rules of apportionment. So that from the description in the deed the lines bounding the accretions to lot 10 could be readily located. If there would be difficulty in determining the boundaries of the accretions to lot 10 as they existed at some proposed prior period, the difficulty would arise from the uncertainty as to the line of the river bank at the given time; but, if the line of the bank of the river at the proposed time was given, this difficulty would disappear. So that at the time that the deeds were executed, the line of the river bank being then apparent, the boundaries of the accretions as they then existed could be readily located from the description in the deed. At that time there had been but one government meander-line of the Nebraska bank of the river, and, of course, that part of the description, "the meander-line of the state of Nebraska according to government survey," must refer to the only meander-line of such survey in existence. The other description criticised is similar to this one, and we think that these deeds are not void for uncertainty.

3. It is contended that the lands in controversy are not accretions; that the changes in the Missouri river are "too perceptible and too rapid to allow the land formed thereby to be called 'accretions.'" This question was fully considered by the supreme court of the United States in *Nebraska v. Iowa,* 143 U. S., 359, 12 Sup. Ct. Rep., 396. In the opinion by Mr. Justice Brewer the conditions causing the changes in the banks of the river are fully stated. The same conditions are established by the evidence in this case, and this case is controlled by the conclusion there announced: "The law of accretion applies to the Missouri river, notwithstanding that owing to the swiftness of its current and the softness of its banks, the changes are more rapid and extensive than in most other rivers."

4. The defendants insist that the accretions after the date of the government patents are not part of lots 10, 11 and 1, because the accretions after the meander-line was established in 1856, and prior to the patents by the government, did not pass with the lots. It is urged that these accretions formed a strip of land between the lots and the river, title to which remained in the government, and the title to subsequent accretions to these lands remained also in the government. We think that it must be found from the pleadings and evidence that there were considerable accretions to the lots between the time they were platted by the government, in 1856, and the entry for patent for lots 10 and 11 from the government to Smith, July 5, 1859, and for lot 1 by Reed in 1863. Did these accretions go with the lots by the government patents, or did the title thereto remain in the government? The original plat, a certified copy of which was in evidence, shows that the meander-line of 1856 formed the south boundaries of lots 10 and 1, and a part of lot 11. While this evidence is not conclusive, it is *prima facie* evidence of the fact. *Lammers v. Nissen,* 4 Nebr., 245. When the government patented these lots the accretions thereto formed a strip of land lying between these lots and the river, but the defendants are mistaken in supposing that this fact would prevent

these accretions passing by the patent. In the case of *Lammers v. Nissen, supra,* in the syllabus it is said : "An entry of government land, bounded by a meandered line, does not include land lying at the time between such meandered line and the bank of the river." But the words "at the time" relate to the establishing of the meander-line, and not to the entry of the government land, as will clearly appear from the opinion, and will also appear from *Bissell v. Fletcher,* 19 Nebr., 725, and *Harrison v. Stipes,* 34 Nebr., 431. When the meander-line, which is the boundary of the land, coincided with the bank of the river, subsequent accretions to the land belong to the land so bounded; and if the title was in the government when the land was so platted, and was afterwards patented, the accretions go with the land by the patent. *Jefferis v. East Omaha Land Co.,* 134 U. S., 178, 10 Sup. Ct. Rep., 518. And the same principle is recognized by this court in the cases above cited. In both *Lammers v. Nissen* and *Bissell v. Fletcher* it appears from the respective statements of fact that at the time of the survey there was a tract of land between the land platted and the river. This land was not included in the plat, but was reserved by the government. And, although some of the language used may be indefinite, it must not be supposed that this court intended to hold that an entry of government land bounded by a meander-line does not include land lying at the time of the entry between such meandered line and the bank of the river, notwithstanding that the bank of the river was coincident with the meandered line at the time of establishing such line. The rule applied in *Harrison v. Stipes, supra,* can not be misunderstood.

5. The defendants complain that their exhibit 6 was excluded from the evidence by the court; but this exhibit, if admitted, could not have affected the result. The defendants also complain of the ruling of the court in admitting evidence offered by the plaintiff; but it is the established rule of this court that the decree of the trial court will not be reversed because of receiving incompetent evidence when

the decree is supported by evidence which is competent and was properly admitted.

It is recommended that the judgment of the district court be affirmed.

OLDHAM and POUND, CC., concur.

AFFIRMED.