COURTLAND J. YEARSLEY, APPELLEE, v. REBECCA A. GIPPLE, APPELLANT.

FILED DECEMBER 26, 1919. No. 20473.

1. Waters: RIPARIAN OWNERS: COMMON LAW. The common law as to the rights and duties of riparian owners is in force in this state, except when altered or modified by a statute.

2. ———: ———: ACCRETIONS. If lands become riparian by the washing away of adjoining lands, the owner is entitled to the right of a riparian owner to accretions, even though they extend beyond the original boundary line of his land.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. Affirmed.

William H. Pitzer, Earl M. Cline, Varro E. Tyler, George E. Hager and O. L. Jones, for appellant.

D. W. Livingston, contra.

LETTON, J.

The purpose of this action is to quiet the title to certain lands lying in the valley of the Missouri river, together with accretions, and to enjoin the defendant from trespassing upon the accreted lands. The defendant denies the title of plaintiff to the premises, and by way of cross-petition alleges title in herself by deed from Mary A. Topping to that portion of the accreted lands which lies east of the original boundary of plaintiff's land. The court found that plaintiff was a riparian owner, and entitled to all accretions; that the defendant's grantor, Mary A. Topping, was not possessed of any title or interest in the accreted land, and that her deed conveyed

no title to the defendant. The title of the plaintiff was quieted, defendant was enjoined from entering or trespassing upon the premises, and her cross-petition was dismissed, from which decree she appeals.

In 1908 a tract of land 200 rods square in the northwest corner of section 31, described as "Government lot No. 1, and accretions, in section 31," and also by a sectional description which would have applied to it if it had been in existence and surveyed when the original survey was made, was conveyed by Mary A. Topping to John M. Livingston. This title is held by the plaintiff by mesne conveyance from Livingston.

At the time of the government survey, there was only a small portion of land in the northwest corner of section 31, the remainder of the section being occupied by the Missouri river. Afterwards a large body of accreted land, part of it occupying the place where defendant now claims, was formed to the south and east of this tract. Still later, that vagrant and inconstant stream, by a gradual change of channel, moved westward again and washed away these accretions to a large extent.

In September, 1912, when the plaintiff purchased, there was some of the accreted land belonging to the Toppings lying to the east of the 250-acre tract. The river continued to encroach westward. In November, 1912, a survey of the land was made, and a plat drawn by the county surveyor. This plat and the testimony of the surveyor show that at that time all of the accretions east of the 250-acre tract had been washed away, and the west bank of the river was some distance within the east boundary of the tract. Afterwards the river receded again, and accretions formed to the eastward. The title to the accretions which lie to the east of the original line of plaintiff's land is the matter in controversy in this action.

Plaintiff's contention is that, after the land to the east had been washed away, so that the river formed the eastern boundary of his land, he became a riparian owner, and as such was entitled to all accretions which there-

after formed in front of his property, without regard to the original boundary lines.

Defendant contends that, where a conveyance of land is made by definite boundaries, accretions extending beyond such boundaries do not pass by the deed; that the riparian owner may claim to this original boundary line only, and that the original owner of the soil so washed away and gradually replaced may again assert title.

A critical examination of the cited decisions by defendant shows that a number of general expressions are used which, if considered without reference to the facts in each case, might mislead. They are mostly cases in which the several courts considered that the stream had changed its course by avulsion. The principles applying to avulsion do not apply where the original soil was gradually disintegrated and washed away, the river taking its place, and, as it receded, leaving accretions. When, by gradual erosion, the river became the boundary of plaintiff's land, he then became a riparian owner, and was entitled to all accretions. "The question is well settled at common law that the person whose land is bounded by a stream of water, which changes its course gradually by alluvial formations, shall still hold the same boundary, including the accumulated soil; no other rule can be applied, on just principles. Every proprietor whose land is thus bounded is subject to loss by the same means which may add to his territory; and as he is also without remedy for his loss in this way, he cannot be held accountable for his gain." *New Orleans v. United States,* 10 Pet. (U. S.) *662. This decision was quoted from and approved in *Lammers v. Nissen,* 4 Neb. 245, 250.

The contention of defendant that, where there are known boundaries of land which has been submerged, this principle does not apply, has been carefully considered by the courts of England and Ireland, and a contrary conclusion reached. *Gifford v. Yarborough,* 5 Bing. (Eng.) 163 (3 B. & C. *91). This case was decided in the same manner in the King's Bench, and after-

wards brought by writ of error to the House of Lords. Lord Eldon and Lord Chancellor Lyndhurst took part in the decision in the House of Lords, which was unanimous. See, also, *In re Hull and Selby Ry.,* 5 M. & W. (Eng.) *327, and *Attorney General v. M'Carthy,* 2 I. R. (1911) 260, in which it was held that the existence of marks, bounds, or other evidence by which the former boundary line could be ascertained, did not prevent a private owner of lands acquiring title to the accreted land. This is the general rule in this country. *Welles v. Bailey,* 55 Conn. 292. Courts in other states bordering upon the Missouri river take the same view. The exact point is decided in *Widdecombe v. Chiles,* 173 Mo. 195, 61 L. R. A. 309; *Buse v. Russell,* 86 Mo. 209; *Naylor v. Cox,* 114 Mo. 232; *Cox v. Arnold,* 129 Mo. 337; *Peuker v. Canter,* 62 *Kan.* 363; *Fowler v. Wood,* 73 *Kan.* 511, 117 Am. St. Rep. 534; *Nebraska v. Iowa,* 145 U. S. 519, 12 Sup. Ct. Rep. 396; *Jefferis v. East Omaha Land Co.,* 134 U. S. 178, 10 Sup. Ct. Rep. 518.

The common law as to the rights and duties of riparian owners is in force in this state, except when altered or modified by a statute. This court from its earliest decisions on this subject has followed the common law. *Lammers v. Nissen, supra; Gill v. Lydick,* 40 Neb. 508; *Meng v. Coffee,* 67 Neb. 500; *Kinkead v. Turgeon,* 74 Neb. 580. In *Bouvier v. Stricklett,* 40 Neb. 792, both accretion and avulsion had taken place. The fourth paragraph of the syllabus is: "Where the middle of the channel of a stream of water constitutes the boundary line of a tract of land, and the water undermines the banks and the soil caves in and mixes with the water and is washed away, the owner of the land must stand the loss; and the middle of the new channel formed for the river by such process, if a new channel is thus formed, will constitute the boundary line of the tract of land."

In *Ocean City Ass'n v. Shriver,* 64 N. J. Law, 550, 51 L. R. A. 425, which is the principal case relied upon by defendant, and other cases making the same quotation,

there is a misconception as to the rule laid down in De Jure Maris, a work ascribed to Lord Hale, in that the text quoted to support the decision is taken from that part of the treatise relating to sudden changes by avulsion or by submergence. The writer treats, first, of "Alluvio maris," next of "Recessus maris." As to land acquired by accretions, or, as he says, "by insensible degrees," it is said: "That such an acquisition lies in custom and prescription; and it hath a reasonable intendment, because these secret and gradual increases of the land adjoining *cedunt solo tanquam majus principali;* and so by custom it becomes as a perquisite to the land, as it doth in all cases of this nature by the cival law." He then takes up the subject of "Recessus maris," saying: "This accession of land, in this eminent and sudden manner by the recess of the sea, doth not come under the former title of *alluvio,* or increase *per projectionem.*" "But in the case of *alluvio maris,* it is otherwise, because the accession and addition of the land by the sea to the dry land gradually is a kind of perquisite, and an accession to the land, and, therefore, in case of private rivers, it seems by the very course of the common law, such a gradual increase *cedit solo adjacenti.*" Chapter 6, De Jure Maris, containing the above quotations, is reprinted in 16 Am. Rep. 60. It is under that part of the chapter treating of the sudden retreat of the sea, *recessus maris,* that the quotation in the New Jersey case, and in the other opinions to the same effect, is found, and it is inapplicable to the facts in cases of pure accretion.

The judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.