## UNITED STATES v. FIRST NAT. BANK OF DECATUR, NEB.

### No. 985.

District Court, D. Nebraska, Omaha Division.
July 27, 1931.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb.

Howell, Tunison & Joyner, of Omaha, Neb., for defendant bank.

WOODROUGH, District Judge.

The defendant is the owner of an undivided six-sevenths interest in certain lands formerly a part of the tribal lands of the Omaha Indians, having acquired the same by mesne conveyances from members of the tribe to whom the lands were allotted in the year 1900 and subsequently conveyed first in trust and later in fee simple. The allotments and patents described the lands as the S. W. ¼ of the N. W. ¼, and the east half of the S. W. ¼ of section 33, township 25 north, range 10 east of the Sixth P. M. in Thurston county, Neb., having reference to a government survey and plat made in 1867, and included in the description is the statement as to one of the tracts that it contains forty acres, and as to the other that it contains eighty acres.

In 1890 the Missouri river had moved to the west and submerged other surveyed and platted lands and encroached upon parts of

the lands above described, and caused such parts to become riparian. Thereafter, and prior to 1896, the river had receded, leaving a considerable area of surveyed and platted lands between the described lands and the river bank. Both movements of the river were slow and imperceptible, and since 1896 the river has remained far to the east of the lands.

The government sues for the Indian tribe, and claims that the alluvian lands between the lands above described and the river belong to the tribe. The defendant claims that they are accretions to its lands and belong to it. Under the treaty with the Indian tribe, the river marked the eastern boundary of the tribal lands, and the survey and platting of the lands in 1867 were as near as might be in accordance with the river banks as they were then (although the field notes disclose that at places there were some low lying bottoms not covered by water that were not surveyed or included in the plat). The river shifted back and forth and constantly found new channels in the loose soil of the valley, and the evidence is that the Indian tribe occupied and used all of their lands Indian fashion. Particularly they resorted to the river bottoms to gather wood for fuel and soft new growth trees for tepee poles, and they trapped and fished.

 When the time came to make the allotments to individuals in 1900, about thirty-three years after the official survey, the plat showed the lands in which the defendant has become interested to be remote from the river, and also that full quarters of the survey intervened between them and the river. The allotments were made by reference to the plat as it then correctedly showed the land and the number of acres which were stated to be within the descriptions. But it is the theory of the defendant that, because their land had at a prior time been riparian, it should be held that it had remained riparian, and that the allotment and grants of the forty and eighty acres described carried with them the alluvian to the river. It relies upon decisions of the Supreme Court of Nebraska under which it is laid down as law that, where a homestead entry is made upon government lands whose boundary line is the river at the time of the survey and platting in reference to which the entry is made, accretions existing at the time of entry go to the entryman. It is also held that, where riparian lands are conveyed as such, there is a presumption that appurtenant accretions go with the grant without express declaration. It is also ruled that one whose lands have been submerged and lost does not recover his right to them when they reappear as accretions to a neighbor's lands. De Long v. Olsen, 63 Neb. 327, 88 N. W. 512; McBride v. Whitaker, 65 Neb. 137, 90 N. W. 966; Yearsley v. Gipple, 104 Neb. 88, 175 N. W. 641, 8 A. L. R. 636. The defendant also correctly insists that Nebraska laws apply to land titles in the state.

 In this case, however, the sole inquiry is what lands the United States intended to and did grant to defendant's predecessors in interest. The Omaha tribe owned its lands before Nebraska became a state, and their rights were fixed by treaty. It is not competent for either the Congress by legislation or the states by court decisions to impair those rights. The survey and platting of the lands of the tribe did not of itself affect the tribal ownership of the whole body of lands owned by the tribe. Undoubtedly many shiftings and changes of its course were made by the river between the survey in 1867 and 1900 when allotments were made. Thereby lands which were accreted accrued to the tribal ownership, and other lands were lost to them. But the intention of the United States in the allotments must be found as of the time when they were made. The treaty and the acts of Congress leave no doubt whatever that important considerations of policy fixed the limitations upon the amount of land that should be allotted to an individual. Accordingly, the picture at the time of the allotments is perfectly clear. The river had through the years advanced and receded, but at the time of the allotments all of the lands here in issue were dry lands in place, as shown by the survey and the plat, and the river was remote and other surveyed lands intervened. What the river had done in the years gone by was past history. The parties to the allotment went upon the lands, as shown by the plat. Those were the lands selected and chosen by the allottees and found to be suitable for them. They were identified by lines and sectional markings, and the number of acres was specified. The grant was intended to pass and did pass from the tribe to the individual what was specified and nothing else. Under the treaty and the acts of Congress and the circumstances existing, it would have been a manifest wrong against the tribe if the United States had undertaken to take away from it and give to an individual Indian more than he was entitled to have allotted him. Assuming that the laws of the state are as defendant claims; and assuming that surveyed land once riparian is always riparian unless in its turn eroded and submerged; still

636

the making of an allotment cast the duty upon the United States and the individual Indian to go upon the land and select it out of the tribal lands, to see to it that the full acreage was included, and that no unnecessary addition was added to it and that the treaty and the laws were fulfilled. Such was the trust assumed by the United States. If the acting officers in making out the papers should overlook some ruling of the state, and should make a conveyance which according to those rulings would carry more land than was lawful, the tribe would still have its remedy. But it is not to be assumed that any such wrong was intended or done. The defendant has a good title to the lands specifically described, and none other.

I have indicated upon the findings requested those found and those refused allowing exception and delivering the same to the clerk as part of this record. Decree for the United States as prayed.