**Victor FONTENELLE et al., Plaintiffs,**

**v.**

**OMAHA TRIBE OF NEBRASKA et al., Defendants.**

**Civ. No. 02200.**

United States District Court
D. Nebraska.

April 7, 1969.

---

**31.** *Id.*

**32.** *Id.*

John J. Powers, Omaha, Neb., and Ralph M. Anderson, Tekamah, Neb., for plaintiffs.

Richard L. Edgerton, Asst. U. S. Atty., for United States.

Keith Hopewell, Tekamah, Neb., for defendant, Virgil Hanson.

Morton Liftin, Washington, D. C., for Omaha Tribe of Nebraska, a federal corp.

## MEMORANDUM

RICHARD E. ROBINSON, Chief Judge.

This is an action to quiet title to land formed after 1867 by the movement of the Missouri River receding from its east meander line as established by the official United States survey of that year. Specifically involved is an area which lies between the west bank of the Missouri River as it exists presently and the east boundary of Lots 2, 3 and 4 of Section 26, and Lot 4 of Section 36, Township 24 North, Range 10 East, as shown on the official 1867 plat. This large tract of land which has been denominated by the parties as "accretion land" is described as follows:

Beginning at the northernmost point of Lot 2, Section 26, Township 24 North, Range 10 East of the 6th Principal Meridian, according to the official plat and survey, thence east on a line parallel with the extended north line of said Section 26 to the center of

the present channel of the Missouri River, thence following the center of the channel of said River down stream to a point directly east of the Southeast corner of Lot 4 of Section 36, Township 24 North, Range 10 East of the 6th Principal Meridian, according to the official plat and survey; thence west to said Southeast corner of Lot 4 of said Section 36, thence following the meander line of the original government survey of 1867 of the Missouri River in a Northwesterly direction to the point of beginning.

This case was tried, post-trial briefs filed, arguments had and the case is now ready for decision, based upon the following findings of fact and conclusions of law.

It may be noted that at the conclusion of the testimony it was suggested by Mr. Edgerton, former Assistant United States Attorney, that it might be helpful to an understanding of the evidence and issues if the Trial Judge were to make an on-sight inspection of the area involved in this litigation. The writer indicated at that time that he might consider such an inspection after receipt of posttrial briefs and arguments. Since the submission of the matter the writer has concluded that such a trip is not necessary to an understanding and decision of the issues; and moreover that such a trip at this late date would only serve to delay a decision herein which is now long overdue.

At the conclusion of the plaintiffs' evidence and after plaintiffs had rested The Omaha Tribe of Nebraska and the United States of America as Trustee and Guardian of Omaha Tribe of Nebraska, a Federal corporation moved the Court as follows:

"moves the Court for a directed judgment for the reason that the plaintiff has failed to show that at the time of the survey, that is, the survey of 1867, or at the time of the selection of these lots by the Indian allottees, which would be in respect to Lot 4 of Section 36, and Lot 4 of Section 26, to be the date that the trust patent was is-sued, December 9, 1884, and the time of selection of Lots 2 and 3 in Section 26 would be May 23, 1900; that the particular lots which I have made reference to, Your Honor, were riparian to the river. That is, both dates, at the time of selection or the time of survey; that the only evidence adduced by the plaintiffs was that at some time, give or take, somewhere around World War I, that the river may have encroached upon the high bluff, the west bank of the Missouri River, which parallels the patented ownership of the Fontenelles, but this was subsequent to either of the dates of selection or of patent; that by reason of the evidence that is now before the Court through stipulation by and between the parties, the Court would have sufficient grounds to quiet title in the United States of America to the accretion lands in question."

The said defendants further moved the Court to dismiss the action for the reason that the Court is lacking in jurisdiction in that the Tribe had failed to give its consent to be sued. Ruling on said motions was reserved. Again at the end of all of the evidence the said defendants reasserted their motions made following the conclusion of the plaintiffs' case as to jurisdiction and as to the directed judgment.

The plaintiffs are the owners of Lots 2, 3 and 4 of Section 26 and of Lot 4 in Section 36 in Township 24 North, Range 10 East of the 6th Principal Meridian in Burt County, Nebraska, and are the collateral descendants of Logan Fontenelle, the first chief of the Omaha Tribe. These tracts of land were originally patented by the United States, pursuant to statutory authorization to individual members of the Omaha Tribe of Indians out of lands included in the Omaha Indian Reservation. The trust patents covering Lot 4, Section 26 and Lot 4, Section 36 were issued on December 29, 1884 and a fee patent was issued on November 5, 1912. A trust patent covering Lots 2 and 3, Section 26 was approved on February 14, 1900, and a fee patent

was issued on March 24, 1924. All of the patents set out precise acreages contained in the grants and, with the exception of the fee patent covering Lots 2 and 3, Section 26, were issued "according to the official plat of the survey of the said land returned to the general land office by the Surveyor General."

The issues in this case may be stated simply:

1. Do grants by patent to land which bordered on the Missouri River at the time of the official survey and plat carry with them title to acreage added physically to the patented lands by the process of accretion?

2. Does the fact that the patented lands were originally included in an Indian reservation call for the application of rules or principles of accretion different from those pertinent to non-reservation lands?

■ The defendant also argues that the evidence tends to show the disputed acreage to have been formed by avulsion rather than accretion. However, the testimony from the lips of old time residents in the Tekamah area [Tekamah, Nebraska, is a short distance south of the locale of this controversy], whose memory extended back as far as 1907, outlined the familiar story of the twisting, turning and shifting of the Missouri River in its broad bed, of the formation of gumbo lakes, the appearance and disappearance of sandbars, the growth of willows * * * adding up to a composite picture of the gradual movement of the main channel from the eastern part of the river bed to its western part, a process of accretion and reliction. [It is noted incidentally that reliction, that is, the gradual recession of the water from its bank, is governed by the same principles as accretion and the Court will not attempt to distinguish the terms in this Memorandum. See Patton

Titles, 1938 Edition, Section 170, pp. 586, 588].

■ The Tribe early filed a motion to dismiss based on sovereign immunity. It denied that it had consented to be sued. The Court overruled this motion on the ground that Section 5[i] of the Corporat Charter of The Omaha Tribe.[1] which charter had been approved by the Secretary of Interior, supplied such consent.

■ There is little dispute in the evidence as to the basic matters. After this action was instituted the Court granted the defendant a continuance to allow it time to cause to be made a re-survey of the Missouri River through Section 26 and the north part of Section 36 in Township 24 North, Range 10 East of the 6th Principal Meridian. This was accomplished by a team of technicians under the supervision of Mr. Richard Snider, a United States Bureau of Land Management Surveyor. Using the original T. H. Barrett field notes, Mr. Snider located various quarter corners and produced a plat which is almost precisely identical with the Barrett plat. His evidence established conclusively that there had not been the slightest error in the official plat and survey. Once having proven the correctness of the plat and survey and the absence of a showing of fraud or mistake in its making a showing that the meander line of the West bank of the Missouri River constituted the cast line of Lots 2, 3 and 4 of Section 26 and Lot 4 of Section 36, Township 24 North, Range 10 East of the 6th Principal Meridian is also established. This plat and survey shows, therefore, the above described land to be riparian to the Missouri at the time of the official survey and plat and therefore defendant's motion claiming failure to prove that the lands were not riparian is without merit. Whether the land was

1. [i] To sue and to be sued in courts of competent jurisdiction within the United States; but the grant or exercise of such power to sue and to be sued shall not be deemed a consent by the said Tribe or by the United States to the levy of any judgment, lien or attachment upon the property of the Tribe other than income or chattels specially pledged or assigned.

riparian at the time of the selection or issuance of the patent is irrelevant and motion based upon failure to prove such is also overruled.

■ It is obviously impossible to draft a plat of riparian lands which would delineate precisely the water's edge, an inconstant thing, hopelessly so in the case of the errant, restless Missouri. Mr. Snider correctly testified that in making surveys and plats of public lands meander lines are drawn for the purpose of ascertaining the quantity of land contained in the riparian tracts * * * denominated "lots" in contrast to the regular quarter sections or other delineated fractions of sections. The meander lines mark generally the sinuosities of the stream, and in the absence of error or fraud in the survey and plat, the water, and not the meander line, is the boundary of the riparian land. Jefferis v. East Omaha Land Company, 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872 [1890]; 56 Am.Jur., Waters, Section 477, p. 892; Patton Titles, 1938 Edition, Section 173, p. 593 [citing at note 284a, Nebraska v. Iowa, 143 U.S. 359, 12 S.Ct. 396, 36 L.Ed. 186 [1892]].

■ The case which is probably most often cited by jurists and lawyers in discussion of the effect of accretion on riparian boundaries is Jefferis v. East Omaha Land Company, supra, decided by the United States Supreme Court in 1890. Following the rule of law which had been enunciated in an 1836 opinion of the highest court, Mayor, Aldermen and Inhabitants of New Orleans v. United States, 10 Pet. 662, 9 L.Ed. 573, and reiterated in Banks v. Ogden, 2 Wall. 57, 17 L.Ed. 818 [1864], excerpts from both of which opinions were quoted with approval, the high court ruled that land added by accretion and reliction to tracts which were riparian at the time of official survey and plat is the property of the riparian owner.

This rule of law still obtains. It has been applied in cases too numerous to set out here. Nebraska has consistently followed it. See for example, Yearsley v. Gipple, 104 Neb. 88, 175 N.W. 641, 8 A.L.R. 636 [1919] and Wiltse v. Bolton, 132 Neb. 354, 272 N.W. 197 [1937].

There is nothing in the evidence presented in this case that would indicate that the rule is not pertinent here.

■ Generally where a grant of land is made by patent, which refers to an official plat of the survey, the plat becomes a part of the patent and usually it cannot be collaterally attacked. Sala v. Crane, 31 Idaho 191, 170 P. 92. Admittedly, where through mistake, fraud, negligence or for unknown reasons, the true meander line of the main water body has not been shown on the plat, that is where it is proved that substantial land area beyond the depicted meander line were in existence at the time the official plat was drawn, the courts have justifiably held that the official survey and plat were vulnerable to attack. Horne v. Smith, 159 U.S. 40, 15 S.Ct. 988, 40 L.Ed. 68 [1895]; Jeems Bayou Fishing and Hunting Club v. United States, 260 U.S. 561, 43 S.Ct. 205, 67 L.Ed. 402 [1923].

■ However, since in this case the correctness of the Barrett data and plat was conclusively vouched for through the testimony of the government witness Snider, the general rule of law must apply.

■ The Tribe insists, however, that because of the trust character of the lands contained in the original reservation, the Government's intention when it made allotments to individual Indians and issued trust patents to them covering the same land described in the allotments, was to limit the acreage granted to each individual to the exact amount spelled out in the allotments and patents.[2] The defendant's argument is not

---

2. The patent covering Lots 2 and 3, Section 26, recites "containing 41.75 acres". The patent covering Lot 4 of Section 26 and Lot 4 of Section 36 includes other land and states "186.26" acres.

persuasive. It leans heavily on First National Bank of Decatur v. United States, 59 F.2d 367 [8th Cir.1932]. But the Decatur case is clearly distinguishable since the lands there involved were regular fractions of sections, not fractional lots. More important however is the fact that the lands there in question were not riparian lands at the time they were platted.

In 1912 Congress passed a law providing for the disposal of unallotted land on the Omaha Indian Reservation. The law also contained a provision permitting any member of the Omaha Tribe, whose allotment was subject to erosion by the Missouri River, to relinquish the allotment and to select lands of equal area from the unallotted acreage in lieu of his eroded allotment. This was in confirmation of a policy which the Government had been following for some time. Counsel for the Tribe argues that this policy as confirmed by the 1912 law is indicative of the Government's intention to limit the acreage of any patent to the exact amount spelled out in the patent. The logic of this argument escapes the Court. That the United States recognized the misfortune caused by the inroads of the fickle Missouri and took remedial measures, is obvious. But this bears no relationship to what the intention of sovereign was many years earlier when the acreages were allotted and the patents issued. It goes without saying that no one would question the accretion rights of unallotted reservation land even though the Treaty of 1854 limited the extent of the area of the reservation to 300,000 acres.

The defendant's contention that the reference to quantity in the patent is determinative of the grantor's intent to limit the grantee to that exact amount does not comport with well established principles governing the interpretation of legal descriptions. The same contention was urged in Choctaw and Chickasaw Nations v. Cox, 251 F.2d 733 [10th Cir. 1958], a case quite similar to the instant one since it involved the claim of the two Indian nations to land which had accreted on the north bank of the Red River, the boundary of the Indian lands under a treaty with the United States. The 10th Circuit Court of Appeals in affirming the trial court's ruling against the Indian nations said [p. 735]:

"It is well settled law that a conveyance of lands bordered by a river and intended to be riparian, though the river boundary is described by metes and bounds, as here, carries with it all accreted lands."

Apropos too is the syllabus from Braddock v. Wilkins, 182 Okl. 5, 75 P. 2d 1139, 1140, quoted by the court in the Choctaw case [735]:

"When a conveyance of land by lot numbers contains a stated number of acres purporting to be conveyed, which stated acreage corresponds with the acreage within the meander line, as it existed at the time of the government survey, such statement of the number of acres in no way limits the extent of the grant. The water course and not the meander line is the boundary, and, although the water course shifts and establishes a new water line away from the meander line as surveyed, such water line remains the boundary, and the conveyance describing the land by lot numbers conveys the land up to such shifting line exactly as it does up to the fixed side lines of the lots, and thereby conveys all accretions that exist at the time of the execution of the conveying instrument."

The meander line, while used as a guide to determine acreage at the time of the survey, is not the boundary but rather the course of the water will determine a new boundary every time there has been a shifting of the river's course.

The rule likewise applies to lands included in Indian reservations. Choctaw and Chickasaw Indian Nations v. Seay, 235 F.2d 30 [10th Cir.1956] was a case where the Indian tribes were asserting ownership to land which had accreted to Lots 1, 3, 4 and 5 of Section 3, and Lot

1 of Section 10, Township 7 South, Range 5 West, of the Indian Base and Meridian in Oklahoma. The Government surveys had meandered the North bank of the river and the lots extended northward from the line. The Court held that the grants of these lots to a purchaser at a public sale carried with them the accretion and cited as authority United States v. Champlin Refining Company, 156 F.2d 769, 773 [10th Cir. 1946], affirmed 331 U.S. 788, 67 S.Ct. 1346, 91 L.Ed. 1818. In the latter case it was said [156 F.2d p. 773]:

> "Grants by the United States of its public lands bounded on streams or other waters, navigable or nonnavigable, made without reservation or restriction, are to be construed as to their effect according to the law of the state in which the land lies. As regards such conveyances, the United States assumes the position of a private owner, subject to the general law of the state. Where it is disposing of tribal lands of Indians under guardianship, the same rule applies."

See also Oklahoma v. Texas, 258 U.S. 574, 595, 42 S.Ct. 406, 66 L.Ed. 771 [1922] and Choctaw and Chickasaw Indian Nations v. Cox, supra.

■ Consistent with the Champlin case mentioned above and even though the claim is based upon a grant from the United States, the boundary of land on waters and streams is a matter determined by the law of the state in which the land is situated. Whitaker v. McBride, 197 U.S. 510, 25 S.Ct. 530, 49 L.Ed. 857 [1905]. Thus in accordance with Nebraska law grants of land carry to the grantor right and title to the center of the stream unless the terms of the grant clearly denote some intention to restrict. Kinkead v. Turgeon, 74 Neb. 573, 580, 104 N.W. 1061, 109 N.W. 744, 1 L.R.A.,N.S., 762, 7 L.R.A.,N.S., 316 [1906]. Already having decided the intent of the grant was not to stop at the meander line but rather to include accretion land beyond that on the river side

the intent to limit at any point short of the centerline is also clearly not present.

United States v. 11,993.32 Acres of Land, etc., 116 F.Supp. 671 [D.N.D. 1953], was a condemnation case involving issues identical with those in this case, apart from the Indian reservation aspect. As Judge Vogel stated in his opinion in that case, "* * * if there was an intention here to limit the conveyances by the exclusion of accretions, such intentions could easily have been evidenced by including the words 'without accretions' in the patents."

■ The Tribe's claim to ownership of the land by virtue of adverse possession must also fail. In the northern part of the accretion land there had at one time been a fence which was located approximately along the extended south line of Lot 2, Section 26. It connected with another fence running roughly north along the east line of Lot 2. This fence had been erected by the Government as part of the W. P. A. project. It was never considered as a boundary. The accretion land to the north of the extended line of Lot 2 was not shown to be in the actual physical possession of any person or group for any prolonged period of time until 1959 at which time it was cleared of willows and leased to Virgil Hanson by both the plaintiff and the defendant. The remainder of the accretion land was gradually cleared by the plaintiffs and their predecessors in title and farmed by them since the early 1930's. Real estate taxes on the accretion lands have been paid by the plaintiffs since they were first put on the tax rolls.

The Court finds that the plaintiffs are the owners and are entitled to immediate possession of the lands in controversy here and concludes as a matter of law:

1. The patents issued to the predecessors in title of the plaintiffs constituted a grant to them of the land as it actually existed whether said land had been increased or diminished in size by

the action of the river at the time of the issuance of the patents.

2. The plaintiffs are the owners and are entitled to immediate possession of the land formed by the recession of the Missouri River to the east and which lies between the present west bank of the Missouri River and the east lines of Lots 2, 3, and 4 of Section 26 and Lot 4 of Section 36, Township 24 North, Range 10 East of the 6th P.M. as shown on the official plat and survey.

3. The defendant had the burden of proving that it acquired a right to the accretion lands or to any part thereof by virtue of the principles of adverse possession. It failed to sustain that burden.

4. A decree should be entered herein quieting and confirming in the plaintiffs title to the following described real estate:

Beginning at the northernmost point of Lot 2, Section 26, Township 24 North, Range 10 East of the 6th Principal Meridian, according to the official plat and survey, thence east on a line parallel with the extended north line of said Section 26 to the center of the present channel of the Missouri River, thence following the center of the channel of said River down stream to a point directly east of the Southeast corner of Lot 4 of Section 36, Township 24 North, Range 10 East of the 6th Principal Meridian, according to the official plat and survey; thence west to said Southeast corner of Lot 4 of said Section 36, thence following the meander line of the original government survey of 1867 of the Missouri River in a Northwesterly direction to the point of beginning.

as against the defendants, Omaha Tribe of Nebraska, a Federal corporation; United States of America as Trustee and Guardian of the Omaha Tribe of Nebraska; City of Decatur, Burt County, Nebraska, and against all persons having or claiming any interest by or through said defendants and enjoining them forever from ascertaining any claim of interest in said real estate or any portion thereof.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52[a] of the Federal Rules of Civil Procedure. Attorneys for the plaintiff will prepare and submit an appropriate decree on or before fifteen [15] days from date hereof.