STATE ENGINEER OF THE STATE OF NEVADA, APPELLANT, *v.* COWLES BROTHERS, INC., RESPONDENT.

No. 6186

December 18, 1970 478 P.2d 159

*Harvey Dickerson,* Attorney General, and *L. William Paul,* Deputy Attorney General, for Appellant.

*Cooke & Roberts,* of Reno, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

On April 14, 1964 Cowles Brothers, Inc., owners of certain lands adjoining the dry bed of Winnemucca Lake filed an application with the State Engineer of the State of Nevada to drill a well on property located in the dry Winnemucca Lake bed for the purpose of irrigating lands within the dry lake bed.

The application was denied on the ground that Cowles Brothers, Inc., did not own or control the land where it planned to drill the well and put the water to beneficial use. The State Engineer also asserted that because NRS 537.030, passed in 1921, declares Winnemucca Lake to be a navigable body of water, title of the bed thereof remains in the State of Nevada.[1]

Respondent petitioned for review of the State Engineer's order denying permission to drill the well. The district court reversed the State Engineer's ruling and directed the permit to issue. The court's written decision ruled that Winnemucca Lake was a navigable body of water on the date the State of Nevada was admitted to the Union and therefore title to the lake bed vested to the state. The court held, however, that due to the recession of the waters and resulting dry lake bed the doctrine of reliction applied and respondent, as a riparian owner, became the owner of its proportionate share of the dry lake bed. By its decision the trial court rejected the State

[1]NRS 537.030: *"Winnemucca Lake declared navigable; title to bed held by state.* Winnemucca Lake, located in Townships 24, 25, 26, 27 and 28 North, Ranges 23 and 24 East, Mount Diablo Meridian, Nevada, is a navigable body of water and title to the bed thereof is held by the State of Nevada."

Engineer's contention that NRS 537.030 did away with the doctrine of reliction and this appeal is directed to that ruling.

The question herein presented on appeal essentially is whether NRS 537.030 was intended to abolish the common-law doctrine of reliction, and if not, whether the common-law doctrine of reliction applies as against the state.

1. When a territory is endowed with statehood one of the many items its sovereignty includes is the grant from the federal government of all navigable bodies of water within the particular territory, whether they be rivers, lakes or streams. If the body of water is classified as non-navigable at the time of the creation of the state, the underlying land remains the property of the United States, but if it is navigable under the definition hereinafter stated, the water and the bed beneath it becomes the property of the state. United States v. Utah, 283 U.S. 64, 75 (1931); Shively v. Bowlby, 152 U.S. 1, 26, 27 (1894).

"By the American revolution the people of each state in their sovereign character acquired the absolute right to all their navigable waters and the soil under them. The shores of navigable waters and the soil under them were not granted by the Constitution to the United States, but were reserved to the states respectively. And new states have the same right to sovereignty and jurisdiction over this subject as the original ones." County of St. Clair v. Lovingston, 23 Wall (90 U.S.) 46, 68 (1874).

A body of water is navigable if it is used or is usable in its ordinary condition as a highway of commerce over which trade and travel are or may be conducted in the customary modes of trade and travel on water. Brewer Oil Co. v. United States, 260 U.S. 77, 86 (1922).

We can find no quarrel with the trial judge's ruling that at the time of Nevada's statehood in 1864 Winnemucca Lake was a body of navigable water in the legal sense. Neither party disputes that finding and they concede as well that the title to the bed of navigable waters passes to the state when the state is admitted to the Union. The bone of contention centers upon the question of who owns the lake bed when the lake dries up and there is no lake at all.

Generally, the common-law doctrine of reliction would parcel the dry lake bed to the adjoining land owners as riparian

owners. Reliction is the process of gradual exposure of land by the permanent recession of a body of water. 6 Powell on Real Property, ¶ 983 (1970); 5A Thompson on Real Property, § 2560 (1957 Replacement). When the land under the water becomes exposed permanently, simply stated, it belongs to the adjoining land owners.

When the exposure is due wholly or in part to artificial causes and those causes are not the act of the party owning the shoreland the rules that prevail as to ownership of the accreted or relicted land are the same as in the case of accretion or reliction solely by natural causes. 5A Thompson on Real Property, § 2460 (1957 Replacement). This is a diminution of a former, harsher rule brought into being by the advent of more and more artificial causes such as diversion dams, drainage areas and the like.

Coupled with the foregoing, however, is the further requirement that in order for reliction to apply the recession of the water must be gradual and imperceptible. County of St. Clair v. Livingston, supra; see 4 Tiffany on Real Property, § 1222 (1939). We think it clear that the recission of Winnemucca was gradual and imperceptible within the legal import of that terminology. The test of what is gradual and imperceptible is that though the witness may see from time to time that progress has been made they could not perceive it while the progress was going on. County of St. Clair v. Livingston, supra. Reliction applies if those factors exist and they were so found to exist by the trial court in this case. Cf. State v. Longyear Holding Co., 29 N.W.2d 657 (Minn. 1947).

2. Before we may consider the application of the doctrine of reliction against the state here, however, we must consider the effect of NRS 537.030 which in 1921 declared, first, that Winnemucca Lake "is a navigable body of water" and, second, that "title to the bed thereof is held by the State of Nevada." No reason for the statute is disclosed by the record. While the declaration that the lake was navigable was possibly made for some obscure self-serving purpose, appellant and respondent agree that it does not in any way change the status of navigability or non-navigability as of 1864. The state's title became vested in 1864 if the lake was in fact then navigable. United States v. Utah, supra, and Brewer Oil Co. v. United States, supra. Later changes in the navigability of the lake had

no effect on the state's title to the land underlying the lake. This statement in the statutes therefore served no purpose.

The difficulty brought about by the second part of the statute is whether or not its enactment did away completely with the doctrine of reliction by taking away the adjoining land owners' proportionate rights in the dry lake bed and keeping the dry bed within the state's ownership as if the waters were still there. The respondents say that the statute only served the purpose of redeclaring the common-law doctrine of reliction and that when the water receded the exposed property belonged to the adjoining land owners.

3. We can only look to considerations of policy in construing this statute because we find no help from authorities within or without this state. Some weight should naturally be given to the possibility of the state developing the land as a recreation area or perhaps a reservoir for irrigation purposes, although the state did not at any time promote the policy argument or indicate that it so intended the use of the property.

More applicable bases are found in the policy reasons underlying the doctrine of reliction. Various rationale have been given for this rule. "[I]f this gain be by little and little, by small and imperceptible degrees, it shall go to the owner of the land adjoining. For *de minimus non curat lex* . . . ." 2 Blackstone's Commentaries, 262 (Cooley Edition, 1899). "[H]e who sustains the burden of losses and of repairs, imposed by the contiguity of waters, ought to receive whatever benefits they may bring by accretion . . . ." Banks v. Ogden, 2 Wall (69 U.S.) 57, 67 (1864). "[B]y *custom* it becomes as a perquisite to the land . . . ." Yearsley v. Gipple, 175 N.W. 641, 642 (Neb. 1919). "[I]t is the interest of the community that all land should have an owner, and most convenient, that insensible additions to the shore should follow the title to the shore itself." Banks v. Ogden, supra. Powell, in Vol. 6, ¶ 983, of his treatise agrees with the Minnesota Supreme Court "that the rule rests upon a much broader principle, and has a much more important purpose in view, *viz.,* to preserve the fundamental riparian right—on which all others depend and which often constitutes the principal value of the land—of access to the water." Lamprey v. Metcalf, 53 N.W. 1139, 1142 (Minn. 1893).

Clearly, the last of these rationale has no application in the instant situation. The other rationale are relevant, however, and weigh in respondent's favor here. Every parcel of land should have an owner, for private ownership encourages use and development—usually much more quickly than public

ownership. Use and development mean more taxes to the state, and should the need for recreational development or reservoirs appear the processes of eminent domain remain available to the state. Here, the most efficient use of land requires that the doctrine apply. Cf. State v. Aucoin, 20 So.2d 136 (La. 1944). In *Aucoin,* it was good policy to retain ownership in the state so the land could be drained for purposes beneficial to the state. The nature of Louisiana's bayous would seem to make this proposition self-explanatory. At the particular location of Winnemucca Lake no similar design by the state is forseeable, but it is readily apparent from the record that the respondents could easily develop the property for grazing or other agricultural purposes.

The question presented herein is one of first impression in this state. It is a question of state common law whether, and in what way, the doctrine of reliction applies. Our legislature has declared that the common law shall be the rule of decision in the courts of this state unless repugnant to the constitution and laws of this state. NRS 1.030. For the reasons expressed the common-law doctrine of reliction is not repugnant to NRS 537.030. Accordingly, that statute does not abrogate the common-law rule, and the doctrine of reliction applies even as against the state.

Affirmed.

COLLINS, C. J., MOWBRAY and THOMPSON, JJ., concur.

BATJER, J., dissenting:

I respectfully dissent. The majority has found that the common law doctrine of reliction is not repugnant to NRS 537.030, and it is only in this regard that I disagree with the majority's opinion.

In accordance with the constitutional principle of the equality of states, the title to the beds of lakes and streams located within its boundaries passes to a state when it is admitted to the union, if the rivers and lakes are then navigable, and if they are not then navigable the title to the river and lake beds remains in the United States, and state laws cannot affect titles of the beds of nonnavigable streams which are vested in the United States. United States v. Utah, 283 U.S. 64 (1931).

If Winnemucca Lake was not navigable on October 31, 1864, then all the subsequent acts of the legislature of the State of Nevada could not make it so. The trial court found, and the parties agree, that Winnemucca Lake was navigable when Nevada was admitted to the union. It was unnecessary for the

legislature of this state to reaffirm the navigability of Winnemucca Lake because of any apprehension relating to its receding shoreline, because once a waterway is determined to be navigable it remains so down to the last drop. United States v. Appalachian Elec. Power Co., 311 U.S. 377 (1940); Economy Light & Power Co. v. United States, 256 U.S. 113 (1920).

If the only purpose of Chapter 51, Statutes of Nevada 1921 (subsequently NCL § 8345, now NRS 537.030) was to declare Winnemucca Lake to be a navigable body of water, that legislation amounted to a nullity. If reiteration of an established status was its only purpose, it became null and void on March 4, 1921, when it was first approved, and it has remained void ever since, notwithstanding one reenactment. Chapter 2, Statutes of Nevada 1957.

It cannot be inferred that the legislatures in 1921 and 1957 were performing a useless act and compounding a nullity. It is implicit in the wording of the statute that those legislatures intended that the title to the bed of Winnemucca Lake was to continue to be held by the State of Nevada.

Just as the common law doctrine of riparian rights, being unsuited to the condition in this state was not adopted by the enactment of NRS 1.030[1] and the doctrine of appropriative water rights was adopted (Reno Smelting, Milling and Reductions Works v. Stevenson, 20 Nev. 269, 21 P. 317 (1889)), so a statutory enactment has abrogated the common law doctrine of reliction which is repugnant and in conflict with the declaration in NRS 537.030, that the title to the bed of Winnemucca Lake is held by the State of Nevada. The common law must give way to that statute. NRS 1.030; In re Bailey's Estate, 31 Nev. 377, 103 P. 232 (1909); Davenport v. State Farm Mut. Auto. Ins. Co., 81 Nev. 361, 404 P.2d 10 (1965). Cf. United Ass'n of Journeymen v. Stine, 76 Nev. 189, 351 P.2d 965 (1960).

It is clear that were it not for its abrogation by NRS 537.030, the doctrine of reliction would have been controlling here. However, under the present law of this state and the posture of this case, that doctrine is inapplicable. I would reverse the order of the trial court and reinstate the order of the state engineer.

---

[1]NRS 1.030: "The common law of England, so far as it is not repugnant to or in conflict with the Constitution and laws of the United States, or the constitution and laws of this state, shall be the rule of decision in all courts of this state."